**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALTHEA STROUD, AMBER STOER, HEATHER SHAFFER, and THIDA MACKINNON** individually, and on behalf of others similarly situated, | Case No.: |
| | Hon.: |
| Plaintiffs, | Hon.: |
| vs. | |
| **HEALTH CARE SERVICE CORPORATION**, an Illinois Corporation, | |
| Defendant. | |

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND RELIANCE ON JURY DEMAND**

Plaintiffs, ALTHEA STROUD, AMBER STOER, HEATHER SHAFFER, and THIDA MACKINNON (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant HEALTH CARE SERVICE CORPORATION ("Defendant"), and states as follows:

**INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), § 820 ILCS 105/1, *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), § 820 ILCS 115/1, *et seq.*, and for common law claims of breach of contract and unjust enrichment.

2.     Defendant offers consumers and businesses throughout the country assistance with

1

health insurance products.[1] According to its website, Defendant supports "access to quality, cost-effective care" "[t]hrough HCSC health plans in Illinois, Montana, New Mexico, Oklahoma and Texas." Defendant "offer[s] coverage options for large and small employers, plans for individuals and families, as well as Medicare and Medicaid coverage and care coordination."[2]

3.      To support its business operations, Defendant employs remote and brick and mortar hourly employees (referred to by Defendant as "Flex" employees) throughout the country to provide the consumers and businesses with customer support services.[3] These hourly employees, hereinafter collectively referred to as Customer Service Representatives (or "CSRs"), have a variety of internal job titles, including "Customer Advocate I," "Customer Advocate II," "Benefit Advocate," and "Care Champion." However, the material aspects of their employment, duties, and the wage and hour violations complained of herein are the same for all CSRs.

4.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

5.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of

---

[1] *See*, https://www.hcsc.com/ (last visited September 28, 2023).
[2] *See*, https://www.hcsc.com/what-we-do/overview (last visited September 28, 2023).
[3] "Flex" employees worked both remotely and from a brick-and-mortar location, pursuant to a schedule created by Defendant. The CSRs either took their computers and related equipment home with them or stored them in a locker on-site.

an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

7.     Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

8.     Defendant requires its CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

9.     This policy results in CSRs not being paid for all time worked, including overtime.

10.     While performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

11.     The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

12.     Additionally, when the Flex CSRs were scheduled to work in the brick-and-mortar facility, Defendant forced them to perform additional off-the-clock work related to setting up their computers for the workdays.

13.     Specifically, the Flex CSRs were all required to locate and set up their workstation, by plugging in their computers, monitors, and other essential work equipment.

14.     The computer equipment was not left on-site, unless it was stored in a locker.

15.     For each in-person shift, the CSR was required to set up their workstation from

3

scratch.

16.     These integral and indispensable work tasks occurred even before the computer was turned on and off-the-clock.

17.     Further, to the extent a CSR stored their computer and equipment in a locker on-site for in-person shifts, the CSRs were not paid for the time spent unlocking the locker, retrieving the computer from the locker, and carrying it to their workstation.

18.     The U.S. Department of Labor ("DOL") recognizes that the "time spent at a designated place to receive instructions or to pick up and carry tools to a designated place" is compensable time. See DOL Fact Sheet #9, Manufacturing Establishments Under the Fair Labor Standards Act, available at: https://www.dol.gov/agencies/whd/fact-sheets/9-flsa-manufacturers (last visited on September 9, 2023).

19.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

20.     Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

21.     Plaintiffs seek to represent in this action all current and former remote CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

22.     Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

23.     Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

4

24.     Additionally, despite both state and federal law clearly requiring overtime premiums to be paid for all hours worked in excess of forty in a workweek, Defendant often failed to pay overtime premiums for recorded hours worked in excess of forty and instead unjustifiably paid CSRs at their regular rate for overtime hours.

25.     Defendant also paid CSRs non-discretionary performance-based incentive pay, which Defendant failed to incorporate into the calculation of the CSRs' overtime rates, in violation of the FLSA and its governing regulations.

26.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Classes, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

27.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

28.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

29.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

30.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different

citizenship than Defendant.

31. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

32. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

33. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

34. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

35. This Court has personal jurisdiction over Defendant because it conducts business within the state of Illinois, has its principal place of business and headquarters in Illinois, is registered with the Illinois Department of Insurance which lists Cook County as its "domicile," and employs individuals within the state of Illinois.

36. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Illinois, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

37.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

38.     Plaintiff ALTHEA STROUD ("Plaintiff Stroud") is an Illinois resident who has worked for Defendant as a remote CSR in Illinois within the last three years.

39.     Defendant paid Plaintiff Stroud for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $17.00 per hour, plus non-discretionary incentive payments.

40.     Plaintiff Stroud signed a consent to join this collective action lawsuit. **Exhibit 1**, Stroud Consent to Join.

41.     Plaintiff AMBER STOER ("Plaintiff Stoer") is a Texas resident who has worked for Defendant as a remote CSR in Texas within the last three years.

42.     Defendant paid Plaintiff Stoer for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $20.00 per hour, plus non-discretionary incentive payments.

43.     Plaintiff Stoer signed a consent to join this collective action lawsuit. **Exhibit 2**, Stoer Consent to Join.

44.     Plaintiff HEATHER SHAFFER ("Plaintiff Shaffer") is an Illinois resident who has worked for Defendant as a remote CSR in Illinois within the last three years.

45.     Defendant paid Plaintiff Schaffer for her services in the form of an hourly wage of $20.00 for all credited hours worked, plus non-discretionary incentive payments.

46. Plaintiff Shaffer signed a consent to join this collective action lawsuit. **Exhibit 3**, Dujardin Consent to Join.

47. Plaintiff THIDA MACKINNON ("Plaintiff Mackinnon") is an Illinois resident who worked for Defendant as a remote CSR in Illinois within the last three years.

48. Defendant paid Plaintiff Mackinnon for her services in the form of an hourly wage for all credited hours worked, plus non-discretionary incentive payments.

49. Plaintiff MacKinnon signed a consent to join this collective action lawsuit. **Exhibit 4**, Mackinnon Consent to Join.

50. Defendant is an Illinois mutual legal reserve company, headquartered in Chicago, Illinois, registered with the Illinois Department of Insurance with its principal place of business located at 300 E Randolph Street, Chicago, Illinois 60601-5099.

## GENERAL ALLEGATIONS

51. Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices within the last two (2) years.

52. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) primarily taking in-bound calls from individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

53. Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that regularly require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average

five (5) days each week, and up to forty (40) hours or more in a workweek.

54.    These schedules result in CSRs routinely working overtime.

55.    Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

56.    At all relevant times, Defendant controlled its CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

57.    Defendant was also responsible for training and continuing its CSRs' education in their role as CSRs.

58.    Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

59.    These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

60.    Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

61.    Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts.

62.    Defendant furthermore enforces their policy of requiring computer networks, programs and applications be open and ready at the commencement of a CSR's shift through their performance metrics and schedule adherence policies.

63.    More specifically, being clocked in but unavailable to take or make calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

64. Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries from consumers.

65. Defendant's performance metrics also graded CSRs on how quickly they could resolve his or her calls ("AHT" or "average handle time").

66. Additionally, Defendants written policies required CSRs to be prepared to take calls the moment their scheduled breaks and lunches ended by limiting their extended break time ("EBT") to no more than two minutes.

67. Defendant also evaluates CSRs based on their "Availability," meaning the amount of time they are available to take calls while clocked-in.

68. A CSR cannot be prepared to take calls, and thus make themselves available, without having loaded and logged into all of their computer systems.

69. Together, these performance metrics necessarily require that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

70. In order to be fully prepared to promptly and efficiently handle calls, CSRs were required to have loaded and logged into all of their computer programs at the beginning of the shift.

71. Furthermore, CSRs are graded on the amount of time they are clocked in but unavailable to take calls.

72. Defendant subjected Plaintiffs and all other CSRs to discipline for clocking in after the start of their scheduled shift, which violated their companywide attendance policy.

73. Additionally, while Defendant routinely scheduled CSRs to work forty hours per

week, Defendant also prohibited CSRs from working overtime hours without advanced approval. Accordingly, recording the time spent working outside of their scheduled shift would violate Defendant's prohibition on unapproved overtime.

74.     Plaintiffs' supervisors deterred them from recording work time outside of their scheduled shifts.

75.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

76.     Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

77.     Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

78.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than fifteen (15) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

79.     This time could easily be recorded, accounted for and paid, but Defendant chose not to credit such time as time worked.

A.     **Off-the-Clock Work – Workstation Set Up/Break Down**

80.     Defendant employs CSRs pursuant to its "HCSC Telecommuting and Flexible Work from Home Program Policy."

81.     Under this policy, Defendant establishes a schedule for CSRs to work from home on some days and work remotely on other days.

82.     Defendant provides all CSRs with their computers and related equipment, including: CPUs, a headset, cables, keyboards, power strips, and a mouse.

11

83.     However, when working in the brick-and-mortar facility, the CSRs must assemble and disassemble their workstations before and after every shift.

84.     Defendant does not compensate CSRs for the time spent assembling and disassembling their workstations.

85.     The process of assembling the workstation before every shift requires the CSRs to engage in five (5) to ten (10) minutes of off-the-clock work before every shift.

86.     The process of disassembling the workstation after every shift requires the CSRs to engage in another five (5) to ten (10) minutes of off-the-clock work after every shift.

87.     CSRs perform these compensable work activities when the computer is off, thus, the time is not captured by Defendant's computerized timekeeping system (Workday).[4]

88.     Additionally, some CSRs are given the option of leaving their computer and related equipment in a company provided locker, rather than taking it home.

89.     However, in addition to the process of setting up the workstation, Defendant does not compensate CSRs for the time spent unlocking their locker and carrying their computer and related equipment to their workstation.

90.     This process of unlocking the locker and carrying the computer equipment to the workstation results in, at least, another two (2) to three (3) minutes of off-the-clock work for every on-site shift in which a locker is used.

**B.      Pre-Shift Off-the-Clock Work – Computer Bootup**

91.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

---

[4] Recently, Defendant has changed from the "e-Time Webclock" timekeeping system to "Workday."

92.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

93.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging twelve (12) to fifteen (15) minutes per day, and the tasks can take longer (thirty (30) minutes or even more) if CSRs experience technical problems with the computer, software, and/or applications.

94.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to perform a number of compensable work tasks including turning on and logging into their computers; connecting to Defendant's virtual private network (VPN); and loading and logging into a number of essential work programs. Once connected to the VPN, CSRs are required to load and log-into a number of essential work programs. These programs included: VDI, Emulators A-D, Jabber, Finesse, Procedure Flow, Sharepoint, FYI Blue, BAM, UPC Tracker, RPP, VMS, RPI, TMG, Vantage, MPUI, Claims GUI, Citrix, Facets/Montana, Automation Box, Microsoft Teams, Microsoft Outlook, and Blue Source.

95.     Although there was some variation in computer programs used amongst various CSR positions, the core and essential programs used were the same for all CSRs.

96.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept or make calls.

97.     Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

98.     Instead, Defendant maintains attendance policies that require them to be call-ready at their scheduled start time and discourage them from recording hours outside of their regularly

scheduled shifts.

99.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than twelve (12) minutes per day of work performed in connection with the above pre-shift activities.

C.      **Meal-Period Off-the-Clock Work**

100.     Defendant provides its CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

101.     In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

102.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *__completely relieved__* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

103.     Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

104.     On most days, CSRs spend approximately two (2) to three (3) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

14

105.    Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### D.    Post-Shift Off-the-Clock Work

106.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

107.    The shutdown and logout process, along with post-shift claims processing, requires another one (1) to two (2) minutes of off the clock work per shift.

108.    Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

109.    Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

110.    The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### E.    Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

111.    An example of specific workweeks where Defendant failed to pay Plaintiff Stoer all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 01/23/2023 to 02/05/2023

- Plaintiff Stoer was paid at a rate of $18.50 per hour for the forty hours of each work week (total of 80 hours) and $18.50 per hour for 4.41 overtime hours Defendant credited her with as having worked (no overtime premiums paid).

15

- With unpaid pre-shift, meal-period, and post-shift computer boot up time, in a range of fifteen (15) to twenty (20) minutes per shift, at five shifts per week, Plaintiff Stoer should have been paid an additional seventy-five (75) to one hundred (100) minutes at her overtime rate of $27.75.

- With unpaid pre-shift and post-shift workstation set up time, in the range of ten (10) to twenty (20) minutes per shift, at five shifts per week, Plaintiff Stoer should have been paid an additional fifty (50) to one hundred (100) minutes at her overtime rate of $27.75.

112. Similarly, an example of specific workweeks where Defendant failed to pay Plaintiff Shaffer all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 10/03/2022 to 10/16/2022**

- Plaintiff Shaffer was paid at a rate of $18.50 per hour for the forty hours of each work week (total of 80 hours) and $18.50 per hour for 1.87 overtime hours Defendant credited her with as having worked (no overtime premiums paid).

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fifteen (15) to twenty (20) minutes per shift, at five shifts per week, Plaintiff Shaffer should have been paid an additional seventy-five (75) to one hundred (100) minutes at her overtime rate of $27.75.

- With unpaid pre-shift and post-shift workstation set up time, in the range of ten (10) to twenty (20) minutes per shift, at five shifts per week, Plaintiff Shaffer should have been paid an additional fifty (50) to one hundred (100) minutes at her overtime rate of $27.75.

113. Plaintiffs Stroud and MacKinnon similarly routinely worked over forty hours or more hours per week and did not receive overtime premium pay for all hours worked.

114. The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

F.  **Defendant Benefitted From the Uncompensated Off-the-Clock Work**

115. At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described

16

pre-shift, meal-period and post-shift activities performed by CSRs.

116.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

117.    At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

118.    Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

119.    At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

120.    At all relevant times, Defendant used its attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

121.    Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment they clocked in for their shifts.

122.    At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

123.    Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

124.    Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

125.    In light of the explicit DOL guidance cited above, there is no conceivable way for

Defendant to establish that they acted in good faith.

126.    Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

127.    Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

### G.    Defendant's Outright Failure to Pay Overtime Premiums

128.    As illustrated above, Defendant routinely paid CSRs at their straight-time rates for overtime hours worked. This constitutes a clear violation of the FLSA.

129.    Section 207 of the FLSA requires the payment of overtime premiums for hours worked in excess of forty in a workweek "at a rate not less than one and one-half times the regular rate at which he is employed."

### H.    Defendant's Failure to Include Incentive Payments in the Overtime Rate Calculation

130.    In addition to their regular hourly rate, CSRs were eligible for certain performance-based incentive payments.

131.    In violation of the FLSA, Defendant failed to include these payments in the calculation of the CSRs overtime rates, which resulted in the underpayment of overtime.

132.    Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108.

133.    No matter how an employee is paid—whether by the hour, by the piece, on a

commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109.

134.    "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

135.    Defendant's compensation scheme, which included an hourly rate, plus incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

136.    An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

137.    This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. *Id*.

138.    It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. *Id*.

139.    The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

140.    There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.

141.    The burden is on Defendant to establish that any payment should be excluded.

142.    Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

143.    Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

144.    Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).

145.    The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

146.    Because Defendant's compensation scheme failed to incorporate all the non-discretionary bonuses, incentive pay, and shift differentials received in the regular rate of pay (and resulting overtime rates of pay), Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

147.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own

behalf and on behalf of:

> **All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.**

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

148.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

149.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

150.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

151.    Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

152.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

   b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant and failing to compensate the FLSA Collective for the overtime work performed; and

        c.      Willfully failing to include all renumeration in the calculation of the CSRs overtime rates.

153.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

154.    Defendant's unlawful conduct has been widespread, repeated and consistent.

155.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

156.    The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

157.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

158.    The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

159.    Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

160.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

161.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

162.    Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

163.    The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

164.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

165.    The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical.

166.    Plaintiffs reasonably estimate that there are hundreds (if not thousands) of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

167.    There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.

168.    These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre- and post-shift time Rule 23 Illinois Class member spend on setting up their workstation is compensable time;

b. Whether the pre-, mid-, and post-shift time Rule 23 Illinois Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

c. Whether Defendant breached its agreement with Plaintiff and the Rule 23 Illinois Class to pay for all hours worked at the agreed upon rate; and

d. Whether the Rule 23 Illinois Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

169. Plaintiffs' claims are typical of those of the Rule 23 Illinois Class in that they and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

170. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

171. Plaintiffs will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions.

172. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

173. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

174. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

175.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

176.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

177.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

178.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

179.     Plaintiffs common law Rule 23 allegations are bought to the extent no state statutes exist for a particular CSR to recover unpaid straight time wages.

180.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimates there are thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's

computer systems and electronic payroll and personnel records.

181.   There is a well-defined community of interest among members of the Rule 23 Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

   a.   Whether the pre- and post-shift time Rule 23 Class member spend on setting up their workstation is compensable time;

   b.   Whether the pre-shift time that Rule 23 Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

   c.   Whether the time that Rule 23 Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

   d.   Whether the time that the Rule 23 Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

   e.   Whether Defendant's failure to pay the Rule 23 Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

182.   Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the Rule 23 Class's claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

183.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage

and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

184.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

185.     This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

186.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

187.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**Violation of the FLSA, 29 U.S.C. § 201, *et seq*.**
**Failure to Pay Overtime Wages**

188.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

189.     At all times relevant to this action, Defendant was engaged in interstate commerce,

or in the production of goods for commerce, as defined by the FLSA.

190.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

191.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

192.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

193.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

194.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fifteen (15) to twenty (20) minutes of off-the-clock work booting up and shutting down computer systems per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

195.    At all time relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than ten (10) to twenty (20) minutes performing off-the-clock work per shift related to assembling and disassembling their workstations.

196.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

197.    As demonstrated above, Defendant routinely failed to pay overtime premiums for

hours worked over forty.

198.    Defendant's violations of the FLSA were knowing and willful.

199.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

200.    Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

201.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### (Rule 23 Illinois Class Action)
### Illinois Minimum Wage Law, §§ 820 ILCS 105/1, *et seq.*;
### Illinois Wage Payment and Collection Act, §§ ILCS 115/1, *et seq.*;

202.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

203.    The promises made by Defendant to compensate CSRs on an *hourly rate for all hours worked* (the agreement) is binding upon Defendant for purposes of the Illinois Minimum Wage Law (IMWL) and Illinois Wage Payment and Collection Act (IWPCA) discussed herein.

204.    Indeed, Plaintiffs and every other Illinois Class Member had an agreement with Defendant that they would be paid based at their agreed upon hourly rate (and overtime rate when applicable) for *all* hours worked. Defendant promised all CSRs they would be paid an hourly wage for *all* hours worked.

205.    As discussed herein, Defendant failed to pay Plaintiffs and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

206.    Through the implementation of their written timekeeping and attendance policies, as well as the verbal representations made by Defendant's management to CSRs regarding their

29

attendance, scheduling, and hourly compensation, Defendant promised Plaintiffs and the Rule 23 Illinois Class payment at their regular hourly rate for *all* hours worked in exchange for the performance of the CSRs' job duties.

207.    Plaintiffs accepted that offer, performed the duties of a CSR for Defendant, but Defendant breached their agreement with Plaintiffs and the Rule 23 Illinois class by failing to pay them for *all* hours worked as promised.

208.    At all times relevant to the action, Defendant was an employer covered by the mandates of the IMWL, and Plaintiffs and the Rule 23 Illinois Class are employees entitled to the IMWL's protections.

209.    The IMWL, §§ 820 ILCS 105/1, et. seq. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* § 820 ILCS 105/4; 820 ILCS 105/4a.

210.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

211.    The IWPCA "applies to all employers and employees in [Illinois], but excepting employees of the State or Federal governments." Plaintiff and the Rule 23 Illinois class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

212.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the

end of the pay period in which such wages were earned."

213.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

214.    820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that the Defendant unilaterally altered time records to exclude the pre-, mid-, and post-shift activities discussed herein, Defendant violated 115/9 of the IWPCA.

215.    Additionally, 820 ILCS 115/14(a) provides that "an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

216.    Defendant violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

217.    As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.


**COUNT III**
**(Rule 23 Class Action)**

31

**Breach of Contract**

218.    Plaintiffs reallege and incorporate all previous paragraphs herein.

219.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours) and the CSR has no state statute to recover unpaid straight time wages.

220.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other member of the Rule 23 Class to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

221.    Defendant's contractual promises to pay Plaintiffs and each member of the Rule 23 Class' applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the members of the Rule 23 Class.

222.    Upon information and belief, each member of the Rule 23 Class, including Plaintiffs, is paid on an hourly rate.

223.    Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift, post-shift, and meal period activities, described herein.

224.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

225.     On occasion, CSRs missed time from work causing them to work under 40 hours in a given week.

226.     To the extent there is no other state law remedy available, Plaintiffs' and the members of the Rule 23 Class's remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

227.     As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

### COUNT IV
### (Rule 23 Class Action)
### Unjust Enrichment

228.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

229.     This Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

230.     This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

231.     At all times relevant to this action, Defendant promised Plaintiffs and every other member of the Rule 23 Class a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the members of the Rule 23 Class performed for the benefit of Defendant.

232.     Plaintiffs and every other member of the Rule 23 Class relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

233.     By not paying Plaintiffs and every other member of the Rule 23 Class the agreed

upon hourly wage for the off-the-clock work they performed each shift Defendant was unjustly enriched.

234.     Plaintiffs and the members of the Rule 23 Class performed off-the-clock work tasks at the request of and without objection by Defendant.

235.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every member of the Rule 23 Class and enjoyed the benefits derived therefrom.

236.     Upon information and belief, Defendant used the monies owed to Plaintiffs and every other member of the Rule 23 Class to finance its various business ventures or pay its equity owners.

237.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the members of the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

238.     Plaintiffs and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Classes were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

239.     As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other member of the Rule 23 Class suffered damages, including but not limited to, loss of wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Class request judgment as follows:

a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I), and permitting prompt

notice to issue to all similarly-situated employees;

b.     Certifying this action as a class action (for the Rule 23 Illinois Class and Rule 23 (common law) Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs state law claims under the IWPCA, IMWL, and common law (Counts II-IV);

c.     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the Rule 23 Illinois Class members, and Rule 23 members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.     Designating Plaintiffs as the representatives of the FLSA collective action and undersigned counsel as Class counsel for the same;

e.     Designating Plaintiffs as the representatives of their respective state Rule 23 Illinois Class and the Rule 23 (common law) Class, and undersigned counsel as Class counsel for the same;

f.     Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.     Declaring Defendant's violation of the FLSA was willful and/or in reckless disregard of the FLSA;

h.     Declaring Defendant violated the IMWL as cited herein;

i.     Declaring Defendant violated the IWPCA as cited herein;

j.     Declaring Defendant breached its contracts with the CSRs as cited herein;

k.     Declaring Defendant was unjustly enriched, as explained herein;

l.     Declaring Defendant's violations of the state laws was willful;

m.     Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Classes the full amount of damages and liquidated or treble damages available by law;

n.     Awarding reasonable attorneys' fees, penalty interest, and costs incurred by Plaintiffs in filing this action as provided by statute;

o.     Awarding the issuance of civil penalties and forfeitures as discussed herein;

p.     Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

q.     Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 29, 2023          Respectfully Submitted,

**HOOPER HATHAWAY, P.C.**

*s/ Oscar A. Rodriguez*
Oscar Rodriguez (P73413) (*Admitted*)
126 S. Main St.
Ann Arbor, MI 48104
Phone: (734) 662-4426
Fax: (734) 662-9559
Email: orod@hooperhathaway.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*Admitted*)
402 W. Liberty St.
Ann Arbor, MI 48103
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E. Monroe St., Suite 3800
Chicago, IL 60603
Phone: (954) WORKERS
Fax: (954) 327-3013
Email: AFrisch@forthepeople.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*