# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| **ALTHEA STROUD, AMBER STOER, HEATHER SHAFFER, and THIDA MACKINNON** individually, and on behalf of others similarly situated, | Case No.: 1:23-cv-14309 |
|  | Judge: Andrea R. Wood |
| Plaintiffs, | Magistrate Judge Maria Valdez |
| vs. |  |
| **HEALTH CARE SERVICE CORPORATION**, |  |
| Defendant. |  |

---

**PLAINTIFFS' *UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR APPROVAL OF FLSA COLLECTIVE SETTL**

**Table of Contents**

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS AND SUMMARY OF LITIGATION .................................. 2

A. The Parties ....................................................................................... 2

B. Procedural History .............................................................................. 3

C. Plaintiffs' Allegations of Off-the-Clock Work ............................................ 4

D. Defendant's Defenses to the Alleged Off-the-Clock Work .............................. 4

E. Summary of Discovery Conducted Prior to Settlement ................................... 5

F. Facts Regarding the Settlement Collective and Defendant's Potential Exposure ................. 6

III. SUMMARY OF THE SETTLEMENT TERMS ............................................... 7

A. The Common Settlement Fund ............................................................... 7

B. The Settlement Class............................................................................ 8

C. The Settlement Collective ..................................................................... 8

D. Settlement Claims Administration........................................................... 8

E. Notice and Claim Procedure ................................................................. 9

F. Funding of the Settlement.................................................................... 10

G. The Releases ................................................................................... 10

H. Individual Settlement Payment Allocation Formula...................................... 10

I. Collective Representative Service Awards ................................................ 11

J. Attorney Fees and Litigation Costs........................................................ 11

IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL PURSUANT TO FED. R. CIV. P. 23 AND FLSA APPROVAL ........................................................ 11

A. Settlement of Class Action Litigation is Favored......................................... 11

B. The Criteria for Preliminary Settlement Approval Are Satisfied. ..................... 14

1. Strength of Named Plaintiffs' Case as Compared to the Terms of the Proposed Settlement 15

2. Complexity, Length, and Expense of Further Litigation ................................. 16

3. Opinion of Counsel .......................................................................... 16

4. The Stage of the Proceedings and Discovery Completed................................. 17

C. The Settlement Class Meets All Requirements of Rule 23(a) and Rule 23(b)(3) and Should Be Certified for the Purposes of Settlement. ............................................... 17

1. The Requirement of Numerosity is Met. .................................................. 18

2. The Commonality Requirement is Met..................................................... 18

i

3.    The Typicality Requirement is Met. ........................................................ 19

4.    The Adequacy Requirement is Met. ........................................................ 20

a.    Plaintiffs' Counsel is Experienced and Qualified. ................................ 20

b.    There is No Conflict of Interest Between Named Plaintiffs and the Settlement Class Members. ......................................................................................................... 20

5.    The Predominance Requirement of Rule 23(b)(3) is Satisfied. ............................ 20

1.    The Court Should Award Attorneys' Fees from a Percentage of the Fund. ........................ 22

2.    The Results and Benefits Conferred Upon the Settlement Class Justify the Fee Award. .... 25

3.    Analysis of the Market for Legal Services Supports Plaintiffs' Request. ............................ 26

a.    Plaintiffs' Counsel's Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market ............................................ 26

b.    The Risk of Nonpayment Was Significant ...................................................... 29

c.    A Cross-Check is Not Necessary ...................................................................... 29

4.    The Litigation Costs and Administration Costs are Reasonable and Necessary ................. 30

5.    The Proposed Collective and Class Representative Service Awards are Reasonable and Should Be Approved. ................................................................................................... 31

F.    The Parties' Proposed Settlement Notice Plan Should Be Approved. .................................. 31

V. SCHEDULING THE FINAL APPROVAL HEARING IS APPROPRIATE ........................ 32

VI. CONCLUSION .......................................................................................................... 32

## Table of Authorities

**Cases**

*Adams v. Aztar Indiana Gaming Co., LLC*, No. 320CV00143MPBRLY, 2023 WL 2197075 (S.D. Ind. Feb. 24, 2023) ............................................................................................ 22

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .......................................................................................................... 14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 18, 21

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) 12, 13, 14

*Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ............................................................................................................................ 30

*Bell v. PNC Bank*, 800 F.3d 360 (7th Cir. 2015) ................................................................ 19

*Benoskie v. Kerry Foods, Inc.*, No. 19-CV-684-PP, 2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) ...................................................................................................................... 23, 28

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................. 23

*Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956 (N.D. Ill. June 12, 2018) ...................................................................................................................... 23, 28

*Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ............................................................................................................ passim

*Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010) ............................ 28

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................... 18, 21

*Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) .................................................................................................................................... passim

*Chen v. Genesco, Inc.*, No. 118CV00690SEBTAB, 2020 WL 360517 (S.D. Ind. Jan. 22, 2020) ............................................................................................................................ 24, 28

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................... 12, 13

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ........................................................................ 30

*Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472 (N.D. Ill. May 18, 2018) 24, 28

*Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466 (N.D. Ill. 1992) .................................. 18

*Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985) .............................. 26

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ......................................... 15

*Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995 (N.D. Ill. May 1, 2017) ............................................................................................................................ 23, 28

*Gallant v. Arrow Consultation Servs., Inc.*, No. 119CV00925SEBMPB, 2020 WL 2113399 (S.D. Ind. May 4, 2020) .................................................................................................... 24, 28

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998).. 24, 28, 30

*Healy v. Int'l Brotherhood of Elec. Workers,* 296 F.R.D. 587 (N.D. Ill. 2013) ........................ 19

*In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ................................................................................................................................... 24

*In re AT&T Mobility Wireless Data Servs. Sales Litig.* 270 F.R.D. 330 (N.D. Ill. 2010) 13, 14, 21

*In re Cont'l Ill. Secs. Litig.*, 962 F.2d 566 (7th Cir. 1992) ........................................................ 29

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015)... 27

*In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106 (7th Cir. 1979).............. 15

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000).................................. 16

*In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022)............................................................ 30

*In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) ........................................ 24, 27, 28, 30

*In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2008 WL 11358136 (N.D. Ill. Jan. 3, 2008) ................................................................................................................................... 13

*In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................................................................................. 16

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996).......................................................................... 14, 16

*Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481 (7th Cir. 2012)................................................. 19

*Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ................................................................................................................................... 23

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276 (7th Cir. 2017)............. 15

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................................................................... 19

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) .......................................................................................................... passim

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ................................................................................................................. 24

*Krueger v. New York Tel. Co.*, 163 F.R.D. 433 (S.D.N.Y. 1995)................................................... 20

*Kujat v. Roundy's Supermarkets Inc.*, No. 1:18-CV-05326, 2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) ............................................................................................................................ 23, 28

*Linnear v. Illinicare Health Plan, Inc.*, No. 1:17-CV-07132, 2019 WL 13072750 (N.D. Ill. Dec. 17, 2019) ............................................................................................................................. 27

iii

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir.1982)................................. 22

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998) ................................................. 20

*Mason v. M3 Fin. Servs., Inc.*, No. 15-CV-04194, 2018 WL 11193175 (N.D. Ill. June 29, 2018) ....................................................................................................................................... 31

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093 (D.C. Cir. 1985)............................. 13

*Pickett v. Simos Insourcing Sols., Corp.*, 249 F. Supp. 3d 897 (N.D. Ill. 2017) ........................ 13

*Prena v. BMO Fin. Corp.,* No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) 22, 23, 28

*Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003) ............................................... 23

*Retired Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993)........................................... 20

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002)............................................... 14

*Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir. 1992) ...................................................... 17, 18, 19

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)............................................. 29

*Skelton v. G.M. Corp.*, 860 F.2d 250 (7th Cir. 1988) ......................................................... 23, 24

*Smith v. Sprint Commc'n Co.,* 387 F.3d 612 (7th Cir. 2004)....................................................... 21

*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)..................................................................... 19

*Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011).. 25

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ...................................................... 23, 26, 29

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646 (7th Cir. 2006) ..................... 14, 15

*Taubenfeld v. AON Corp.,* 415 F.3d 597 (7th Cir. 2005) ................................................. 26, 28, 29

*Wal-Mart Stores, Inc., v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541 (2011) ................................... 19

*Watson, et al. v. BMO Financial Corp. and BMO Harris Bank, N.A.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016).................................................................................................................... 22

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) ...................................... 30

*Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898 (N.D. Ill. Nov. 4, 2022) ...................................................................................................................... 24, 28

*Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 WL 628016 (N.D. Ill. Feb. 2, 2005).... 18

## Other Authorities

Fed. R. Civ. P. 23(a)(1)-(4)....................................................................................................... 18

Fed. R. Civ. P. 23(b) ................................................................................................. 17, 18, 20

*In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ...................................................................................................................................... 29

*Manual for Complex Lit.*, at § 21.632-34.............................................................................. 12, 31

*Mollett v. Kohl's Corp.*, No. 21-CV-707-PP, 2022 WL 4641082 (E.D. Wis. Sept. 30, 2022) ..... 28

Newberg & Conte, at § 11.22, et seq. ................................................................................... 12, 13

Rule 23(e)................................................................................................................................. 32

## I. INTRODUCTION

This is a putative class and collective action wage and hour case that has been heavily disputed and litigated over the past two years. *See* Dkt. 1 (the "Complaint"). Notwithstanding the aggressive litigation by the Parties, they have reached an arms'-length negotiated settlement of the instant claims. Through the present motion, Plaintiffs Akila Stroud on behalf of Althea Stroud, Amber Stoer, Heather Shaffer, Thida Mackinnon, and Detrina Solomon (hereinafter "Named Plaintiffs") seek preliminary approval under Fed. R. Civ. P. 23 of a class settlement and approval under the Fair Labor Standards Act ("FLSA") of a collective settlement that provides substantial relief to approximately 13,270 hourly employees that worked for Health Care Service Corporation ("Defendant") in several Customer Service Representative ("CSR") positions, as defined in the Parties' Settlement Agreement and Release of Claims (the "Agreement"). *Exhibit 1*, at ¶ 1.8.

Pursuant to the Parties' Settlement Agreement and Release of Claims (the "Agreement"), Defendant has agreed to pay up to a Maximum Gross Settlement Amount (the "Common Fund") of $10,000,000.00.[1] *Id.*, at ¶ 1.18, ¶ 3.1(A). The Common Fund is inclusive of Plaintiffs' Counsel's attorneys' fees and litigation costs (including Plaintiffs' share of the mediation expenses), all amounts to be paid to or on behalf of Participating Class Members and Participating Collective Members, all Collective and Class Representative Service Awards, the Settlement Claims Administrator's fees and costs, and all related taxes (including Employer Payroll Taxes). *Id.*

Because the Parties' Agreement is "fair, reasonable and adequate," provides the Settlement Class Members and Settlement Collective Members (jointly referred to herein as the "Class") with substantial monetary relief without the need to file their own lawsuits, and satisfies all other criteria for preliminary approval under Fed. R. Civ. P. 23 and FLSA approval, the Court should grant this

---

[1] Unless otherwise specified, capitalized terms are specifically defined in the Parties' Agreement.

motion. Plaintiffs respectfully request that the Court enter an Order, in the form of the proposed order attached hereto (and contemporaneously emailed to chambers) that: (1) grants preliminary approval of the Agreement; (2) grants approval under the FLSA of the Agreement; (3) approves the proposed Settlement Notice and directs implementation of the notice program; (4) appoints Charles Ash of Ash Law, PLLC, Oscar Rodriguez of Rodriguez Law, PLC, Andrew Frisch of Morgan & Morgan, P.A., and Jason Thompson and Alana Karbal of Sommers Schwartz, P.C. as Collective and Class Counsel; (5) approves Akila Stroud on behalf of Althea Stroud, Amber Stroer, Heather Shaffer, Thida Mackinnon, and Detrina Solomon as Collective and Class Representatives; and (6) sets the date for the Final Approval Hearing.

## II.     STATEMENT OF FACTS AND SUMMARY OF LITIGATION

### A. The Parties

Defendant is a mutual legal reserve company and a member-owned health insurance company headquartered in Chicago, Illinois.[2] *See* Dkt. 1 at ¶ 50. To support its business operations, Defendant employs remote, brick and mortar and flex CSRs throughout the country. *Id*. at ¶ 3. Named Plaintiffs maintain that these CSRs all perform the same or similar over-the-phone customer service duties and use the same or similar computer programs, software programs, applications, and phone systems. *Id*. at ¶ 19. Additionally, Defendant provides the CSRs with their computers and the associated hardware necessary to complete their job duties. *Id*. at ¶ 82.

Named Plaintiffs, the Settlement Class Members, and Settlement Collective Members are current and former hourly CSRs employed by Defendant during the "Relevant Class Period" and "Relevant Collective Period," as defined in the Parties' Agreement. Ex. 1 at ¶ 1.32, ¶ 1.33.

---

[2] *See* https://www.hcsc.com/ (last accessed 8/27/2025).

**B. Procedural History**

Named Plaintiffs filed this lawsuit on September 9, 2023, asserting violations of the FLSA on an individual and collective basis, as well as violations of the Illinois Minimum Wage Law, Illinois Wage Payment and Collection Act, common law breach of contract, and unjust enrichment.[3] *See generally*, Dkt. 1. In answering the Complaint, Defendant also asserted twenty-nine (29) affirmative defenses. Dkt. 18. From the onset, Defendant vehemently contested the allegations in this lawsuit, and still vigorously denies the allegations despite the settlement.

On October 24, 2023, Named Plaintiffs filed an opposed Pre-Discovery Motion for Conditional Collective Certification ("Conditional Certification Motion"). Dkt. 13, 14. The Conditional Certification Motion was fully briefed by the Parties, then taken under advisement by the Court. The Conditional Certification Motion remains pending before the Court.

In December 2023, the Parties exchanged written discovery requests. In the months that followed, several discovery disputes arose, which are outlined in the Parties' various joint status reports. *See* Dkt. 37, 39, 43. In fact, on July 25, 2024, Defendant filed a Motion to Compel, which was fully briefed, and ultimately denied. Dkt. 45, 50, 53. Following the denial of the Motion to Compel, written discovery continued. Ultimately, Defendant produced (and Plaintiffs' Counsel reviewed) more than twenty thousand pages of documents.[4] *Ex. 2*, Ash Decl. at ¶ 19.

After completing substantial discovery, on December 16, 2024, the Parties advised the Court of their intention to submit the case to mediation with a qualified class and collective action mediator and later confirmed a mediation date of May 9, 2025. Dkt. 63, 66.

---

[3] Detrina Solomon filed her own action shortly after this lawsuit was filed. That case was subsequently voluntarily dismissed, and she joined this lawsuit. For purposes of the Agreement and this motion, she is considered one of the Named Plaintiffs. *See* Dkt. 31-1.
[4] Plaintiffs' Counsel uploaded this enormous number of documents to "Relativity," software designed to house and organize large numbers of documents.

As planned, on May 9, 2025, the Parties attended an in-person mediation in Denver, Colorado with nationally recognized wage and hour mediator, Michael Russell (the "Mediator").[5] After a full-day mediation, no settlement was reached. Over the next several weeks, the Parties continued to exchange settlement proposals through Mediator, eventually reaching an agreement in principle over the monetary terms and general structure of the settlement. However, in finalizing the Memorandum of Understanding ("MOU") additional disagreements arose that required the Parties to return to mediation (this time remotely). Through the second mediation the Parties were able to reach agreement on all material terms and finalize the terms of the MOU. Subsequently, the terms agreed upon in the MOU were incorporated into the Agreement, Notice, and Claim Form, which is now before the Court for approval. *See* Ex. 1.

### C. Plaintiffs' Allegations of Off-the-Clock Work

Named Plaintiffs submitted detailed declarations outlining their alleged off-the-clock work in support of the Conditional Certification Motion.[6] Dkt. 14-3 to 14-6. In the Complaint and declarations, Named Plaintiffs estimated that the time related to booting up and shutting down computer systems, which occurred daily, took approximately 15 minutes.[7] *See* Dkt. 1 at ¶ 194.

### D. Defendant's Defenses to the Alleged Off-the-Clock Work

From the onset of this case, Defendant has strongly disputed that any compensable off-the-clock work occurred. As stated above, Defendant asserted 29 affirmative defenses that include: good faith, willfulness, statute of limitations, *de minimis*, the Portal-to-Portal Act, and failure to

---

[5] *See* https://milesmediation.com/neutrals/michael-russell/ (last accessed on 8/27/2025).
[6] At the time Named Plaintiffs filed the Conditional Certification Motion, Solomon still had a separate lawsuit pending and had not yet joined.
[7] Some of the Named Plaintiffs alleged that they were not paid for time spent assembling computer hardware as "Flex" employees when they reported to Defendant's brick and mortar facility for work. However, this claim did not occur daily and did not apply to all CSRs.

exhaust administrative remedies (under applicable CBAs) among others. *See* Dkt. 18. Assuming arguendo that any compensable off-the-clock work was suffered/permitted, and Defendant strongly denies that any occurred, Defendant maintains that Named Plaintiffs' factual allegations regarding the time needed to perform the alleged off-the-clock work activities are wildly exaggerated. Instead, the activities are de minimis and can (and should) be completed in a small fraction of the time alleged by Named Plaintiffs. Furthermore, Defendant has asserted that the CSRs could, and in fact often did, manually record their own actual start and end times in the timekeeping system. Dkt. 21-1. Also, CSRs were permitted to log in to the system 5-10 minutes before the start of their scheduled shifts to load programs. Ex. 2, at ¶ 28.

In addition to these merit-based arguments, Defendant maintains that class and collective certification in this case is inappropriate, and that if litigation continues, no class or collective should be certified because of, among other things, the varying experiences of class and collective members. *See, e.g.,* Dkt. 20-21, Defendant's Opposition to Conditional Certification.

While Named Plaintiffs believe they could overcome some or all these defenses, they nonetheless created bona fide issues of fact, associated risks of proceeding and factored in to Named Plaintiffs' decision to settle the case. *Id.*

**E. Summary of Discovery Conducted Prior to Settlement**

Prior to filing the Complaint, Plaintiffs' Counsel engaged in substantial pre-suit research, both factual and legal, on behalf of Named Plaintiffs and the putative class and collective. The Named Plaintiffs conferred and exchanged written correspondence and documents with Plaintiffs' Counsel on dozens of occasions regarding various aspects of the claims. Ex. 2 at ¶10.

After the Lawsuit was filed and Named Plaintiffs filed the Motion for Conditional Certification, then written discovery commenced and continued for approximately a year and a

half. As stated above, Defendant produced over 20,000 pages of documents that included: training materials, company handbooks, computer equipment and use instructions, offer letters, e-mails, paystubs, payroll and time data, performance reviews, and disciplinary records. Ex. 2 at ¶19, 25. In sum, Plaintiffs obtained substantial discovery to evaluate the asserted claims. *Id*. Plaintiffs painstakingly reviewed the discovery produced, with the assistance of their expert CPA.

### F. Facts Regarding the Settlement Collective and Defendant's Potential Exposure

To assist in analyzing the large amount of payroll and time data, and ultimately, to assist in the creation of a damages model, Plaintiffs' Counsel retained the services of expert forensic accountant, Eric Lietzow, CPA/ABV.[8] Ex. 2 at ¶¶ 21-22. With the assistance of Mr. Lietzow, Plaintiffs' Counsel was able to model damages and identify all the key metrics in the data over a 4-year period, such as: 961,759 total work weeks; approximately 4,164,082 shifts total shifts; and an average hourly rate of $20.54. *Id*. Likewise, Defendant retained its own damages expert.

According to Named Plaintiffs' damage modeling, at five (5) minutes of off-the-clock work per shift for computer bootup and shutdown activities (one third of the amount alleged in the complaint and Named Plaintiffs' declarations and an amount exceeding Defendant's claimed "best case scenario" for Named Plaintiffs to the extent they were to prevail), over a 4-year look back period, the total unpaid overtime damages (excluding liquidation) for the Settlement Collective amounts to $5,553,787.92 and unpaid straight time wages for the Settlement Class amounts to $3,496,845.25, for a combined total of $9,050,663.17. Ex. 2 at ¶ 30. However, as the Court is aware, the FLSA statute of limitations only provides for a 3-year look back period, and to date, no collective has been certified and there have been no consent to join forms filed outside of those filed by the Named Plaintiffs.

---

[8] *See* https://www.dmavalue.com/team/eric-lietzow (last accessed 8/27/2025).

For purposes of comparison, Named Plaintiffs' damage modeling of Defendant's maximum exposure, at the full fifteen (15) minutes of off-the-clock computer bootup and shutdown time, over the 4-year look back period, the total unpaid overtime damages (excluding liquidation) for the Settlement Collective amounts to $16,661,303.74 and unpaid straight time wages for the Settlement Class amounts to $10,490,553.57, for a combined total of $27,151,857.30. Ex. 2 at ¶ 31.

Notably, most of the Settlement Collective and Settlement Class reside in states that have no additional state wage law protections providing for the recovery of pure straight or "gap" time (i.e. non-overtime hours worked in non-overtime workweeks). Ex. 2 at ¶32. Consequently, for most of the Settlement Class to establish entitlement to recovery of straight time wages, they would need to establish their claims under common law claims of breach of contract or unjust enrichment. Furthermore, they would need to obtain Rule 23 certification under those common law theories in classes that would encompass multiple states. Accordingly, establishing an entitlement to any straight time wages in this case would be a very difficult task for any of the Settlement Class Members, including those that reside in Illinois (who would similarly need to prove the existence of a prior "agreement" to pay for the alleged off-the-clock time).

### III.   SUMMARY OF THE SETTLEMENT TERMS

#### A.  The Common Settlement Fund

The Agreement establishes a Common Fund of $10,000,000.00. Ex. 1, at ¶ 1.18. The Common Fund covers the Collective and Class Representative Service Awards, Plaintiffs' Counsel's attorney's fees and costs, the Settlement Administrator's fees and costs, all related taxes (including Employer Payroll Taxes), and the payments to the Participating Class Members and Participating Collective Members. *Id.*, at ¶ 1.18, ¶ 3.1.

7

**B. The Settlement Class**

Settlement Class Members means Named Plaintiffs (including Solomon) and all current or former CSRs who worked for Defendant between September 29, 2020, through August 11, 2025 (the "Relevant Collective Period"). Ex. 1 at ¶ 1.31.

**C. The Settlement Collective**

Settlement Collective Members means Named Plaintiffs (including Solomon) and all current or former CSRs who worked for Defendant between January 6, 2022, through August 11, 2025 (the "Relevant Collective Period"). Ex. 1 at ¶ 1.32.

**D. Settlement Claims Administration**

The Parties have mutually selected ILYM, Inc. to serve as the Settlement Claims Administrator. Ex. 1 at ¶ 1.22. The Settlement Claims Administrator's duties are set forth in the Agreement and include (but are not limited to): scraping the mailing list against the National Change of Address data set maintained by the United States Postal Service; mailing Notices and Claim Forms to Settlement Class Members and Settlement Collective Members in accordance with the Court's preliminary approval order; responding to inquiries; responding to disputes related to Settlement Class Members' and Settlement Collective Members' settlement amounts; sending notice to the appropriate government agencies or attorneys general pursuant to the Class Action Fairness Act ("CAFA"); calculating the Settlement Checks in accordance with the Court's final and FLSA approval order and the Agreement; distributing the Participating Class Members' and Participating Collective Members' Settlement Checks; reporting on the state of the settlement to the Parties; calculating Participating Class Members' and Participating Collective Members' share of taxes; withholding Participating Class Members' and Participating Collective Members' share of taxes; remitting such tax payments (i.e., withheld Participating Collective Members' share of

taxes) to the appropriate taxing authorities; timely providing Claim Forms and objections to Defendant's Counsel and Class Counsel; calculating and remitting employer taxes; providing counsel for the Parties with any information related to the administration of the settlement upon request; and performing such other duties as the Parties may jointly direct. Ex. 1 at ¶ 2.2. The Agreement provides for settlement administration fees and expenses of up to $85,000. *Id.* ¶ 2.2(A).

### E. Notice and Claim Procedure

Within five (5) business days of the Court's order granting preliminary approval of the Agreement, Defendant will provide the Settlement Claims Administrator the name, social security number, most current address from business records, and dates of employment during the Relevant Class Period and Relevant Collective Period for all Settlement Collective Members and Settlement Class Members (the "Class List"). Ex. 1 at ¶ 2.5(A). Ten (10) days after receiving the Class List, the Claims Administrator will mail to all Settlement Class Members and Settlement Collective Members, via First-Class United State Mail, postage prepaid, the Court-approved Notice, Claim Form, and an addressed postage-paid return envelope. *Id.*, at ¶ 2.5(B).

As illustrated in the Notice and Claim Form, the Parties proposed Notice advises the Settlement Class Members and Settlement Collective Members of: the nature of the claims asserted in the Lawsuit; how to return a claim form; how to opt-out or object; the consequences of taking each action or taking no action at all; and a detailed explanation of the releases. Ex. 1, Exhibit A.

The Settlement Collective will have sixty (60) days from the date of mailing to submit a Claim Form, opt-out of the Settlement Class, or file an objection to the Agreement (the "Response Deadline"). *Id.*, at ¶ 1.29, ¶ 2.5(B). Any Settlement Collective Member that returns a timely Claim Form will become a Participating Collective Member and receive his or her share of the Collective Settlement Amount. *Id.*, at ¶ 1.6, ¶ 2.5(B). Any Settlement Class Member that does not timely opt-

out of the Settlement Class will be considered a Participating Class Member and receive his or her share of the Class Settlement Amount. *Id.*, at ¶ 1.3, ¶ 2.5(B). The Agreement also permits a Settlement Class Member to opt-out of the Rule 23 class settlement, but opt-in to the FLSA collective settlement. *Id.*, at ¶ 2.5(B).

### F. Funding of the Settlement

Within ten (10) days after the Response Deadline, the Claims Administrator shall provide Defendant with the total amount of the Maximum Gross Settlement Amount that is due for the Individual Class Settlement Payments and Individual Collective Settlement Payments based on the timely Claim Forms and Opt-Out Statements received, pursuant to the Agreement. *Id.*, ¶ 3.1(B). Ten (10) days later, Defendant shall transfer those funds into the QSF established by the Claims Administrator along with the amounts due for attorneys' fees, costs, Collective and Class Representative Service Awards, and the Claims Administrator expenses. *Id.*, ¶ 3.1(C), 3.1(D).

### G. The Releases

In exchange for the payments provided under the Agreement, Participating Class Members and Participating Collective Members will be subject to a release of all claims arising out of the "identical factual predicate as the underlying claims in the Lawsuit." *See* Ex. 1 at ¶ 4.1(A), ¶ 4.1(B) (defining the "Released Collective Claims" and "Released Class Claims"). The Named Plaintiffs will be subject to a General Release of all claims. *Id.*, at ¶ 4.1(C). Any Settlement Collective Member who does not participate will not provide a release of the Released Collective Claims.

### H. Individual Settlement Payment Allocation Formula

The Claims Administrator will divide the Class Settlement Amount by the total number of full or partial work weeks that all Settlement Class Members were employed during the Relevant Class Period based on the Class List produced by Defendant ("Class Per Work Week Amounts").

Ex. 1 at ¶ 3.2(A). The Claims Administrator will multiply the Class Per Work Week Amounts by the total number of full or partial work weeks that each Settlement Class Member was employed during the Relevant Class Period noted on the Class List to arrive at an estimated Individual Class Settlement Payment for each Settlement Class Member. Ex. 1 at ¶ 3.2(A). This formula will also be used to calculate the Individual Collective Settlement Payments. *See id.*, ¶ 3.2(B).

### I. Collective Representative Service Awards

The Agreement provides for the Named Plaintiffs to receive Collective and Class Representative Service Awards in the amount of $10,000.00 each (total of $50,000.00) for the Named Plaintiffs' time, effort, and risk (including reputational risk) in bringing and prosecuting this matter, as well as for executing a general release of claims. Ex. 1 at ¶ 3.3(C).

### J. Attorney Fees and Litigation Costs

Under the Agreement, subject to Court approval, Plaintiffs' Counsel will receive $3,333,333.33 (one-third of the $10,000,000.00 settlement fund) as attorneys' fees, plus reimbursement of up to $60,000.00 in out-of-pocket costs and expenses incurred in litigating and resolving this matter. *See* Ex. 1 at ¶ 3.3(A). Currently, Plaintiffs' Counsel's costs total $34,486.16. Ex. 2 at ¶ 46. Any unused funds allocated to litigation costs will pour into the Net Settlement Amount for the benefit of the Settlement Class Members and Settlement Collective Members. Ex. 1 at ¶ 1.20, ¶ 3.3(A).

### IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL PURSUANT TO FED. R. CIV. P. 23 AND FLSA APPROVAL

### A. Settlement of Class Action Litigation is Favored.

Federal courts strongly favor and encourage settlements, particularly in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

1276 (9th Cir. 1992) (noting that "strong judicial policy … favors settlements, particularly where complex class action litigation is concerned"); *see also Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.") (citations omitted).

The traditional means for handling wage claims like those at issue here – individual litigation – would unduly tax the court system, require massive expenditure of public and private resources and, given the relatively small value of the claims at issue, would be impracticable. The proposed Agreement, therefore, is the best vehicle for Settlement Collective and Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A formal fairness hearing or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632-34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, et seq.

The Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Agreement. The purpose of preliminary evaluation

12

of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice of the settlement's terms should be issued to the Settlement Class Members and a formal fairness hearing scheduled. *Id*., § 11.25 at 11-36, 11-37.

The Court has discretion to preliminarily approve a proposed settlement. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (same). As stated above, at preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *In re AT& T Mobility Wireless Data Servs. Sales Litig.* 270 F.R.D. 330, 346 (N.D. Ill. 2010), citing *Armstrong* at 314. *See also Pickett v. Simos Insourcing Sols., Corp.*, 249 F. Supp. 3d 897, 898 (N.D. Ill. 2017) ("At the preliminary approval stage, the Court's task is to "determine whether the proposed settlement is within the range of possible approval.").

Subsequent to the preliminary approval stage, at the final fairness hearing, Settlement Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and my conduct any necessary hearing in court or in chambers, at the Court's discretion. *See*, *e.g.*, *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2008 WL 11358136, at * 6 (N.D. Ill. Jan. 3, 2008) (preliminary approval inquiry often involves an informal presentation of the parties' proposals to the court).

**B. The Criteria for Preliminary Settlement Approval Are Satisfied.**

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. The district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted).

"At the preliminary approval stage, however, the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011), quoting *Armstrong* at 314.

In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *In re AT & T Mobility Wireless Data Servs. Sales Litig.* At 346, citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). *See also*, *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996) (same).

"Thus, although neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage." *American Int'l Group, Inc.,* 2011 WL 3290302, at *6, quoting *AT & T Mobility Wireless Data Servs. Sales Litig.,* at 346.

With the exception of the third factor, which cannot be assessed at this stage, all of these factors warrant preliminary approval of the proposed settlement.

14

### 1. Strength of Named Plaintiffs' Case as Compared to the Terms of the Proposed Settlement

"The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs.* at 653, quoting *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 (7th Cir. 1979). "In analyzing this factor, the district court should consider 'the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 284 (7th Cir. 2017), quoting *Synfuel Techs., Inc.*, 463 F.3d at 653. "This requires acknowledgment of potential defenses and the risk of failure for the class." However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *Id.* at 1197-98, quoting *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). "[A] high degree of precision cannot be expected in valuing a litigation," and the court must merely "come up with a ball park valuation." *Synfuel Techs.* at 653 (quotations omitted).

In the present case, after two mediations with a highly experienced wage and hour mediator, Defendant has agreed to pay a significant sum to the Settlement Class Members given the considerable risks they and the Named Plaintiffs face in this litigation.

Here, the Settlement Class Members must establish common law claims to pay for the alleged unpaid work under a theory of an implied contract, or, in the alternative, under a common law claim for unjust enrichment. Additionally, the Settlement Class Members will face a heavily contested class certification motion. Many of the defenses asserted by Defendant in the conditional certification motion will be raised in opposition to class certification. Of course, obtaining Rule 23 class certification is a far more stringent standard than that which applies to conditional certification under the FLSA. This factor weighs heavily in favor of preliminary approval.

### 2. Complexity, Length, and Expense of Further Litigation

Absent settlement, Defendant would have continued to vigorously defend the Action. Further litigation holds inherent risks for the Settlement Class Members, including failure to obtain certification and/or the failure of their claims on the merits at trial. Additional litigation would only serve to increase the expenses incurred without reducing the risks facing Settlement Class Members. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). This factor favors preliminary approval of the Settlement Agreement.

### 3. Opinion of Counsel

Courts place "significant weight" on experienced class counsel's endorsement of a settlement. *In re Mexico Money*, 164 F. Supp. 2d at 1020; *see also In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016) (same). Here, the team that comprises the proposed Class Counsel are highly experienced class and collective attorneys that specialize in wage and hour matters. In fact, Attorney Ash has successfully litigated at least forty (40) class and collective action cases in federal courts across the country that involve unpaid computer bootup and shutdown activities. Ex. 2, Ash Decl. ¶ 8. In Plaintiffs' Counsel's opinion, the Agreement is fair, reasonable and adequate. *Id.*, ¶¶ 35, 50. *See also* Ex. 3, Frisch Decl., ¶ 20; Ex. 4, Rodriguez Decl., ¶ 8. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Agreement by Plaintiffs' Counsel. Plaintiffs' Counsel used their experience based on their knowledge of the facts of the case and the legal issues facing the Settlement Class Members, including conducting an independent analysis of the strength and weakness of the claims and value of the claims as compared to the time and expense of litigation through trial and appeals. *Id*. This factor strongly favors preliminary approval of the Settlement.

#### 4. The Stage of the Proceedings and Discovery Completed

This complex class and collective action was resolved after conditional certification briefing was completed and after the completion of substantial written discovery.[9] In the course of discovery, Defendant produced more than 20,000 documents, which Plaintiffs' Counsel analyzed prior to mediation. Additionally, Plaintiffs' Counsel retained a highly-qualified damages expert to assist them in analyzing the payroll and time data. Among other documents and data produced during the course of discovery, Defendant produced payroll data for the Settlement Class Members, the written employment policies, performance metrics, offer letters, disciplinary records, and e-mail correspondence based on relevant search terms. In sum, the case was settled at a point during the litigation in which the Parties could accurately model damages and thoroughly assess the strengths and weaknesses of the claims asserted. Furthermore, the case was settled after *two* mediations with a qualified and nationally recognized wage and hour mediator and over the course of months of arms' length negotiations. The stage of the litigation also strongly supports granting preliminary approval.

### C. The Settlement Class Meets All Requirements of Rule 23(a) and Rule 23(b)(3) and Should Be Certified for the Purposes of Settlement.

A determination of class certification requires a two-step analysis. Fed. R. Civ. P. 23(b); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is "impracticable"); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff claims are typical of the class's claims); and (4) adequacy of representation (the class representatives must be able to fairly and adequately

---

[9] The Court previously stayed oral discovery. Dkt. 25.

protect class interests). Fed. R. Civ. P. 23(a)(1)-(4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario,* 963 F.2d at 1017. The parties' settlement is a highly relevant consideration in the class certification analysis. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997). Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004).

The proposed Settlement Class in this case meets each of the statutory requirements for class treatment for the purposes of settlement.

### 1. The Requirement of Numerosity is Met.

Rule 23(a)(1) requires a class large enough that the joinder of all members would be "impracticable." Impracticability does not mean "impossibility," but only difficulty or inconvenience in joining all members of the class. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 471 (N.D. Ill. 1992). Defendants employed approximately 13,270 individuals who are potential Rule 23 Settlement Class Members. A class of this size easily satisfies the numerosity requirement found necessary in this District. *Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 WL 628016, at *2 (N.D. Ill. Feb. 2, 2005) (Darrah, J.) (certifying class where documents showed 39 employees owed overtime pay).

### 2. The Commonality Requirement is Met.

The commonality requirement depends on a common contention that is capable of class-wide resolution, thus allowing the truth of an issue central to the claim to be determined "in one

stroke." *Wal-Mart Stores, Inc., v. Dukes,* 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011); and *see Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 497 (7th Cir. 2012) (citing *Wal-Mart*) (plaintiff must demonstrate that putative class members all "suffered the same injury"). Commonality does not demand that each class member have an identical claim. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). Thus, some factual variation between class members will not defeat class certification. *Rosario* at 1017-18. A single common question will suffice. *Bell v. PNC Bank,* 800 F.3d 360, 374 (7th Cir. 2015), citing *Wal- Mart,* 131 S. Ct. at 2556. And, where the defendant engages in standardized conduct against the putative class members, the legality of which is an "outcome determinative issue," commonality is met. *Healy v. Int'l Brotherhood of Elec. Workers,* 296 F.R.D. 587, 591 (N.D. Ill. 2013).

Commonality is satisfied here for settlement purposes. The proposed Rule 23 Settlement Class Members are comprised of similar individuals who worked for Defendant as CSRs and who were allegedly required to perform the same or similar pre-, mid-, and post-shift work activities related to booting up and shutting down their computers. *See generally*, Dkt. 1. The Settlement Class Members all claim that Defendant breach the contractual promise to pay for all hours worked and/or was unjustly enriched by failing to pay for the alleged off-the-clock work. This is sufficient to establish commonality. *Healy,* 296 F.R.D. at 591.

### 3. The Typicality Requirement is Met.

The Rule 23(a)(3) requirement of typicality is easily satisfied here for the purposes of settlement. The claims of a class representative and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). At issue is whether the Named Plaintiffs and all other CSRs were paid for the time spent on the pre-, mid-, and post-shift computer bootup and shutdown

activities. This is sufficient to meet the requirement of typicality. *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large.").

### 4. The Adequacy Requirement is Met.

#### a. Plaintiffs' Counsel is Experienced and Qualified.

Plaintiffs' Counsel are experienced class action attorneys and have acted as representative counsel in numerous actions in federal and state courts. In fact, as referenced above, Attorney Ash has successfully represented employees alleging off-the-clock work related to computer bootup and shut down activities in over forty (40) class and collective in federal courts across the country. Ex. 2 at ¶ 8. Collectively, Plaintiffs' Counsel has handled over a hundred class/collective action wage and hour cases. *See id.; see* Ex. 3 at ¶ 13.

#### b. There is No Conflict of Interest Between Named Plaintiffs and the Settlement Class Members.

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (quoting *Krueger v. New York Tel. Co*., 163 F.R.D. 433, 443 (S.D.N.Y. 1995)). The Named Plaintiffs have no antagonistic interests that go to the subject matter of the lawsuit. The Named Plaintiffs held the same or similar positions to the Settlement Class Members, and were paid in the same manner, as the proposed Settlement Class Members.

### 5. The Predominance Requirement of Rule 23(b)(3) is Satisfied.

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication

of the controversy." The proposed Settlement Class Members meet the standards of predominance and superiority for the purposes of settlement. Common questions of law and fact predominate because the proposed settlement class is limited to CSRs who claim they were subjected to systemized practices and standardized conduct that resulted in them not being paid for the same type of pre-, mid-, and post-shift computer bootup and shutdown activities. *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 344 (N.D. Ill. 2010).

In addition, the fact that the Parties are asking to certify the proposed class for settlement purposes only weighs in favor of finding that the superiority and predominance elements are satisfied. *Amchem Prods., Inc* at 619-20 (1997); *Smith v. Sprint Commc'n Co.,* 387 F.3d 612, 614 (7th Cir. 2004); *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. at 344. Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc.,* 521 U.S. at 620 (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie* at 660.

The element of superiority is met for settlement purposes because the proposed settlement class is the most efficient way to resolve the claims of the Named Plaintiff and Settlement Class Members. *In re AT&T Mobility Wireless Data Services Sales Litigation,* 270 F.R.D. at 344. Here, the Parties will be allowed to resolve the claims of approximately 13,270 persons in one coordinated proceeding, thus conferring significant benefits upon each Settlement Class Member.

**D. The Court Should Approve the Settlement of the FLSA Collective Action**

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353

n. 8 (11th Cir.1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353–54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354. The strongest claim asserted in this case is the FLSA claim. Thus, the Agreement allocates approximately 70% of the Net Settlement Fund to the FLSA claim. Ex. 1 at ¶ 1.6, ¶ 3.4. For the reasons explained above, the Parties' Settlement easily meets this standard and warrants approval under the FLSA.  *See Adams v. Aztar Indiana Gaming Co., LLC*, No. 320CV00143MPBRLY, 2023 WL 2197075, at *4 (S.D. Ind. Feb. 24, 2023), amended, No. 320CV00143MPBMJD, 2023 WL 6536777 (S.D. Ind. Apr. 4, 2023) ("For the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e)(1), the settlement likewise is a fair and reasonable resolution of a *bona fide* dispute such that the Court can approve the FLSA release…").

Additionally, as then district judge (now Seventh Circuit judge) Amy St. Eve explained in *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) regarding FLSA settlement approval: "[a] one-step settlement approval process is appropriate." *See, e.g.*, *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("A one-step settlement approval process is appropriate [ ]" in FLSA settlements."); *Watson, et al. v. BMO Financial Corp. and BMO Harris Bank, N.A.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF Nos. 34, 39 (granting request for one-step approval process); *Prena v. BMO Fin. Corp.,* No. 15 Civ. 9175, 2015 WL 2344949, *1 (N.D. Ill. May 15, 2015) (same).

**E. Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

**1.  The Court Should Award Attorneys' Fees from a Percentage of the Fund.**

The Court should award attorneys' fees as a percentage of the total fund made available to the Settlement Collective Members and Settlement Class Members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (holding creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (*quoting Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

As Your Honor has previously noted in another FLSA settlement, "[p]laintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois." *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016). Indeed, "[c]ourts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements." *Id.*, *5. Furthermore, the percentage of the fund method, and specifically one-third or more of the common fund, is standard for FLSA common fund collective action settlements in this Circuit. *See, Castillo* 2016 WL 7451626, *at *5*; *Briggs*, at *3 (N.D. Ill. Nov. 29, 2016); *Prena* at *1 (N.D. Ill. May 15, 2015); *Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *3 (N.D. Ill. May 1, 2017); *Kujat v. Roundy's Supermarkets Inc.*, No. 1:18-CV-05326, 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021); *Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018); *Benoskie v. Kerry Foods, Inc.*, No. 19-CV-684-PP, 2020 WL 5769488, at *3 (E.D. Wis. Sept. 28, 2020); *Winking v. Smithfield Fresh Meats Corp.*, No.

23

1:22-CV-01937, 2022 WL 16706898, at *2 (N.D. Ill. Nov. 4, 2022); *Gallant v. Arrow Consultation Servs., Inc.*, No. 119CV00925SEBMPB, 2020 WL 2113399, at *4 (S.D. Ind. May 4, 2020); *Chen v. Genesco, Inc.*, No. 118CV00690SEBTAB, 2020 WL 360517, at *5 (S.D. Ind. Jan. 22, 2020); *Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016).

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees …" *Skelton* at 256. Here, the settlement releases the statutory claims to fees.

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979–80 (7th Cir. 2003); *see also Day,* at *2 (FLSA collective settlement holding "the Court finds that the percentage method is appropriate here because Plaintiffs' Counsel accomplished what that method incentivizes: early resolution of the case without wasteful litigation to increase loadstar hours."); *Winking,* 2022 WL 16706898 at *3 (same). Where attorneys' fees are limited to a percentage of the total fund, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at * 2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation … a fee based

on a percentage of recovery … tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

### 2. The Results and Benefits Conferred Upon the Settlement Class Justify the Fee Award.

Under the Agreement, the Settlement Collective will receive a substantial cash payment. As stated above, the Agreement creates a common fund of up to $10,000,000.00 in exchange for a release of claims arising out of the identical factual predicate as the claims asserted in the Lawsuit.[10] Ex. 1 at ¶ 1.18, ¶ 3.1. As referenced above, based on Plaintiffs' damage model, the Agreement will provide nearly 6 minutes of unpaid wages per shift (including overtime wages for workweeks exceeding 40 hours), which is approximately 40% of the 15 minutes alleged in the Complaint and Plaintiffs' Declarations. Notably, throughout this case Defendant has argued that the CSRs may record their own start time and that the computer bootup and shutdown activities take a small fraction of the time alleged by Plaintiffs.

There is also absolutely no indication of any collusion in obtaining the Agreement. Both sides zealously advocated for their clients and reaching the Agreement that is before for the Court for approval required the assistance of an esteemed mediator who conducted two mediations, and facilitated arms-length negotiations that spanned the course of several months. Ex. 2 at ¶¶ 23-24. *See Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011) ("The involvement of an experienced mediator is a further protection for the class, preventing potential collusion.").

Moreover, the case at bar poses significant risks regarding the merits of the claims, the alleged willfulness of the violations, Defendant's knowledge of the unreported off-the-clock work,

---

[10] Named Plaintiffs *only* will be subject to a general release as part of the consideration for the Collective and Class Representative Service Awards. *See* Ex. 1 at ¶ 4.1(C).

and collective/class certification. Named Plaintiffs remain confident they would prevail on their claims, but as the Court knows, there are risks inherent in litigation. For example, even if Named Plaintiffs established the merits of their claims and prevailed on collective/class certification, if Named Plaintiffs are unable to establish the Defendant's violation was willful, the statute of limitations would only provide for a two-year lookback, which would bar many Settlement Collective Members' claims.

### 3. Analysis of the Market for Legal Services Supports Plaintiffs' Request.

As cited above, Your Honor has recognized that the requested fee of one-third the common fund is "consistent with the market rate in the Northern District of Illinois" and "routinely" approved. *Castillo,* at 4-5. "In awarding attorneys' fees, courts ultimately 'must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Briggs,* at *3 (quoting *In re Synthroid*, 264 F.3d at 718). District courts "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases[.]" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

### a. Plaintiffs' Counsel's Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market

The attorneys' fees that Class Counsel request are based on the market in the Northern District of Illinois. *Id.*, at 600 (approving attorneys' fees based on, inter alia, "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Class Counsel is experienced and nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour cases like this

one (attorney Ash has extensive experience specifically in collective and class actions involving computer bootup claims), and are justified in seeking compensation in the form of one-third of the common fund (plus costs) for their efforts. Ex. 2 at ¶¶ 4-8; Ex. 3 at ¶¶ 12-19; Ex. 4 at ¶ 1-2.

Before agreeing to take on this matter, Plaintiffs' Counsel agreed with the Named Plaintiffs to take a percentage of their (at that time uncertain) future total settlement amount, plus costs. In fact, the Named Plaintiffs agreed to permit Plaintiffs' Counsel to seek up to 40% of their recovery. Ex. 2 at ¶ 40. However, Plaintiffs' Counsel only seeks the customary fee for the Northern District of Illinois, which is one-third of the common fund. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated in the same manner as provided in the Agreement. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness would have attached if parties had establish[ed] a fee structure at the outset of [the] lawsuit"); *see also*, *Koszyk*, 2016 WL 5109196, at *4.

In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third (or even more) of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. *See Koszyk*, 2016 WL 5109196, at *4. In addition, one-third is the standard contingent percentage that employment lawyers in the district charge individual clients. *Id. See also Linnear v. Illinicare Health Plan, Inc.*, No. 1:17-CV-07132, 2019 WL 13072750, at *3 (N.D. Ill. Dec. 17, 2019) (Rule 23 and FLSA settlement approving "thirty five percent of the Gross Settlement Fund as …

consistent with the market in the Northern District of Illinois"), citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforce that Plaintiffs' Counsel request the proper market rate. *See In re Synthroid*, 325 F.3d at 976. Furthermore, this is why courts in this Circuit, including this one, regularly agree that "a counsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (internal citation and quotation marks omitted, collecting cases); *see also*, *Briggs* at *3 (approving at least one-third of the common fund plus costs in a one-step FLSA settlement); *Castillo at *5* (same); *Prena* at *3 (same); *Furman* at *3 (same); *Kujat* at *3 (same); *Brewer* at *3 (same); *Benoskie* at *3 (same); *Mollett v. Kohl's Corp.*, No. 21-CV-707-PP, 2022 WL 4641082, at *1-3 (E.D. Wis. Sept. 30, 2022); *Winking* at *2 (same)*; Gallant* at *4 (same); *Chen* at *5 (same); *Day* at *2 (same); *Koszyk* at *4 (same). These awards of "attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees [Plaintiffs propose should be] awarded by the [Court]." *Taubenfeld*, 415 F.3d at 600.

Here, Plaintiffs' Counsel's requested fee is well within the market rate for common fund wage and hour actions within the Northern District of Illinois. *See id*. at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill* at 362-63 (7th Cir. 1998) (noting "[t]he typical contingent fee is between 33 and 40 percent" and affirming award of 38% of fund).

### b. The Risk of Nonpayment Was Significant

Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the representation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreement to represent the Named Plaintiffs. *Taubenfeld*, 415 F.3d 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Indeed, Defendant has strongly opposed the Named Plaintiffs' collective and class certification efforts in this case. Dkt. 20. Additionally, Defendant has asserted twenty-nine (29) affirmative defenses. Dkt. 18. Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Should the Court reject the settlement, Plaintiffs' Counsel faces significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit noted, Plaintiffs' Counsel "could have lost [and still could lose] everything" they invested. *In re Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992); *Koszyk*, at *4.

### c. A Cross-Check is Not Necessary

Plaintiffs' Counsel's fee request should be approved because it is reasonable based on the market rate. No further showing or analysis is needed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n. 27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"); *see also*, *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) ("I do not believe that a lodestar crosscheck would be useful in this case. The market rate for plaintiff's counsel in a damages case is generally a contingent fee, *Gaskill*, 160 F.3d at 362–63, and any lodestar

calculation would be artificial."). Recently, the Seventh Circuit once again held that in a common fund settlement a "lodestar crosscheck was unnecessary." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 567 (7th Cir. 2022). *See also*, *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("we have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology.").

In fact, "use of a lodestar cross-check has fallen into disfavor." *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014). As the Seventh Circuit explained, "[t]he client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced." *In re Synthroid Marketing Litig.*, 325 F.3d at 979–80 (7th Cir. 2003).

For these reasons, as confirmed by the cases cited herein, courts do not conduct crosschecks in FLSA and Rule 23 common fund settlements. *See*, *e.g.*, *Briggs*, 2016 WL 7018566 ($6 million dollar settlement, no cross check on $2 million dollar fee); *Castillo*, 2016 WL 7451626 ($3 million dollar settlement, no cross check on $1 million dollar fee).

### 4. The Litigation Costs and Administration Costs are Reasonable and Necessary

To date, Plaintiffs' Counsel has incurred $34,486.16 in litigation expenses related to travel, lodging, court fees, expert fees, document and data hosting fees, and mediation fees. Ex. 2 at ¶ 46; Ex. 3 at ¶ 21; Ex. 4 at ¶ 3. All these expenses were reasonable and necessary in the successful prosecution of the lawsuit. *Id*. Accordingly, the Court should preliminarily approve Plaintiffs' Counsel's requested reimbursement for litigation costs in this lawsuit.

Additionally, Plaintiffs' Counsel secured an excellent bid from a reputable and trusted settlement administrator, ILYM, Inc. The quote from the Settlement Claims Administrator

provided that the costs associated with administrating the settlement (including providing PAGA notice pursuant to 28 U.S.C. § 1715) will not exceed $85,000.00. Based on Plaintiffs' Counsel's experience, the price of approximately $6-$7 per head is an excellent price. Ex. 2 at ¶ 45. *See also Mason v. M3 Fin. Servs., Inc.*, No. 15-CV-04194, 2018 WL 11193175, at *2 (N.D. Ill. June 29, 2018) (Your Honor holding that "[t]he Court also finds reasonable and approves the costs incurred by the Claims Administrator in administering the claims and notice in this matter in the amount of $83,000 to be paid out of the Settlement Fund.").

### 5.  The Proposed Collective and Class Representative Service Awards are Reasonable and Should Be Approved.

The proposed Collective and Class Representative Service Awards are aligned with the awards Your Honor approved as reasonable in *Castillo*, and as other Courts in this Circuit have approved in similar settlements. *See*, *Castillo* at *2 (approving $10,000 representative award); *see also*, *Koszyk* at*3 (same); *Briggs* at *2 (approving $12,500 service award). Here, Named Plaintiffs provided critical assistance over the past two years to Plaintiffs' Counsel that made the present Agreement possible. *See*, Ash Decl. at ¶ 47.

### F.  The Parties' Proposed Settlement Notice Plan Should Be Approved.

The notice protocol identified in the Agreement provides proper notice of the Agreement to Settlement Class and Settlement Collective Members. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntarily dismissal, or compromise regardless of whether the class was certified under 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices.

Here, the Parties' proposed Notice and Claim Form, *Exhibit A* to the Agreement, informs the Settlement Collective Members of the terms of the settlement, including the allocation formula,

their estimated settlement payments, how they may participate (or not participate), the consequence of returning a claim form, the consequence of doing nothing, the releases, the process to object, the process to opt-out, and the request for attorneys' fees and costs. *See* Ex. 1, Exhibit A. Thus, the Court should approve the proposed Notice and Claim Form. *See*, *Koszyk*, at *2 (approving notice that, inter alia, described settlement terms and fee allocation).

## V. SCHEDULING THE FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court hears all evidence and argument necessary to make its Settlement evaluation. Proponents of the Agreement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition, Settlement Class Members, or their counsel, may be heard in support of or in opposition to the Agreement. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and partial final judgment under Rule 23(e).

## VI. CONCLUSION

For all of the reasons stated herein, the Named Plaintiffs respectfully request that the Court issue an order substantially similar to the Proposed Order emailed to the Court: (1) approving the Agreement's FLSA collective settlement and preliminarily approving the class settlement pursuant to Rule 23; (2) certifying the Rule 23 Settlement Class and Settlement Collective for purposes of the settlement only; (3) approving the Parties proposed Notice and Claim Form and the procedures for distribution of the same; (4) appointing Ash Law, PLLC, Rodriguez Law, PLC, Morgan & Morgan, P.A., and Sommers Schwartz, P.C. as Collective and Class Counsel; (5) approving the Named Plaintiffs (including Detrina Solomon) as the representatives for the Settlement Class and Settlement Collective; and (6) setting the date for the Final Approval Hearing.

Dated: September 18, 2025          Respectfully Submitted,

**ASH LAW, PLLC**

*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877) (*Admitted*)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**RODRIGUEZ LAW, PLC**
Oscar Rodriguez (P73413) (*Admitted*)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 662-4426
oscar@orodlaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E Monroe Street, Suite 3800
Chicago, IL 60603
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**SOMMERS SCHWARTZ, P.C.**
Jason J. Thompson (*Admitted*)
Alana A. Karbal (*Admitted*)
One Towne Square, 17th Floor
Southfield, MI 48076
jthompson@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

attorneys of record.

*s/ Charles R. Ash, IV*

33