**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **AKILA STROUD** on behalf of **ALTHEA STROUD, AMBER STOER, HEATHER SHAFFER, and THIDA MACKINNON** individually, and on behalf of others similarly situated, | Case No.: 1:23-cv-14309 |
| | Judge: Andrea R. Wood |
| Plaintiffs, | Magistrate Judge Maria Valdez |
| vs. | |
| **HEALTH CARE SERVICE CORPORATION**, | |
| Defendant. | |

---

**PLAINTIFFS' *UNOPPOSED* MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

**Table of Contents**

I.    INTRODUCTION .................................................................................................. 1

II.   BRIEF SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND ................... 1

   A.  Plaintiffs' Allegations and Defendant's Defenses ............................................ 1

   B.  Procedural History of the Lawsuit ................................................................... 3

III.  THE PRELIMINARY APPROVAL ORDER AND SETTLEMENT NOTICE
ADMINISTRATION ........................................................................................... 4

   A.  The Settlement Class and Settlement Collective .............................................. 4

   B.  Administration of Settlement Notice ............................................................... 5

   C.  Settlement Administration Costs ..................................................................... 6

IV.  CERTIFICATION OF THE SETTLEMENT CLASS AND SETTLEMENT
COLLECTIVE REMAINS APPROPRIATE ............................................................. 7

V.  THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 AND
THE COURT APPROVED NOTICE PROCEDURES ................................................. 7

VI.  FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE
THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ........................... 8

   A.  Strength of Plaintiffs' Case as Compared to the Amount of the Settlement ..................... 8

   B.  The Complexity, Length and Expense of Continued Litigation ....................................... 10

   C.  The Lack of Objections to the Agreement Among Effected Parties ................................ 11

   D.  The Opinion of Competent Counsel ............................................................... 11

   E.  The Stage of the Proceedings and the Amount of Discovery Completed........................ 12

VII.  APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE................................. 13

VIII.  THE SERVICE AWARDS FOR THE NAMED PLAINTIFFS ARE APPROPRIATE . 13

IX.  CLASS COUNSEL'S ATTORNEYS' FEES OF ONE THIRD OF THE COMMON
SETTLEMENT FUND AND LITIGATION COSTS ARE CUSTOMARY AND
REASONABLE ................................................................................................. 15

   A.  Class Counsel is Entitled to the Payment of Their Reasonable Attorneys' Fees.............. 16

   B.  Class Counsel's Litigation Expenses are Reasonable....................................... 19

X.  PAYMENT OF THE SETTLEMENT ADMINISTRATOR'S FEES IS REASONABLE.. 19

XI.  CONCLUSION................................................................................................. 20

# TABLE OF AUTHORITIES

**Case Law**

*Beesley v. Int'l Paper Co.*, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .................................. 14-15

*Benoskie v. Kerry Foods, Inc.*, 2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) .......................... 17

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).......................................................................... 17

*Brewer v. Molina Healthcare, Inc.*, 2018 WL 2966956 (N.D. Ill. June 12, 2018)...................... 17

*Briggs v. PNC Fin. Services Grp., Inc.*, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016)............... 14

*Castillo v. Noodles & Co.*, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)........................ 14, 16, 17

*Chen v. Genesco, Inc.*, 2020 WL 360517 (S.D. Ind. Jan. 22, 2020)............................................. 17

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) .......................................................................... 14

*Day v. NuCO2 Mgmt., LLC*, 2018 WL 2473472 (N.D. Ill. May 18, 2018)................................. 18

*De La Riva v. Houlihan Smith & Co., Inc.*, 2013 WL 5348323 (N.D. Ill. March 3, 2015).......... 16

*EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884 (7th Cir. 1985) ............................................. 9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)..................................................................... 8

*Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971 (7th Cir. 2011) ..................................................... 13

*Espenscheid v. DirectSAT USA, LLC*, 688 F.3d 872 (7th Cir. 2011) ........................................ 15

*Furman v. At Home Stores LLC*, 2017 WL 1730995 (N.D. Ill. May 1, 2017) ...................... 15, 17

*Gallant v. Arrow Consultation Servs., Inc.*, 2020 WL 2113399 (S.D. Ind. May 4, 2020) ........... 17

*Hispanics United of DuPage County v. Vill. of Addison, Illinois*, 988 F. Supp. 1130 (N.D. Ill. 1997) ............................................................................................................................. 11

*In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................ 11

*In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)............................................................................................................. 11

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)............................................................................ 8, 11

*Kaplan v. Houlihan Smith & Co.*, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ......................... 17

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) 15, 18

*Kujat v. Roundy's Supermarkets Inc.*, 2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) .................. 17

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir.1982)................................ 13

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ..................................................... 11

*Mason v. M3 Fin. Servs., Inc.*, 2018 WL 11193175 (N.D. Ill. June 29, 2018)............................ 19

*Matter of Cont'l Ill. Sec. Litg.*, 962 F.2d 566 (7th Cir. 1992)....................................................... 18

*Myszka v. Nat'l Collegiate Scouting Ass'n, Inc.*, 2014 WL 1364468 (N.D. Ill. Mar. 19, 2014)... 11

*Prena v. BMO Fin. Corp.*, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ..................................... 13

*Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003) ............................................... 17

*Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091 (D.N.M. 199)....................................... 18

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ..................................................... 16

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ................................................. 8

*Rusin v. Chicago Trib. Co.*, 2013 WL 12377129 (N.D. Ill. June 26, 2013) .................... 11, 14, 15

*Skelton v. G.M. Corp.*, 860 F.2d 250 (7th Cir. 1988) .................................................................. 17

*Small v. Richard Wolf Med. Instr. Corp.*, 264 F.3d 702 (7th Cir. 2001) ..................................... 16

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ................................................................. 17, 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)....................... 1, 8

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ...................................................... 17, 18

*Winking v. Smithfield Fresh Meats Corp.*, 2022 WL 16706898 (N.D. Ill. Nov. 4, 2022)............ 17

iii

**Statutes**

29 U.S.C. § 216(b) ........................................................................................................ 3, 7, 16

820 ILCS 105/12 ................................................................................................................. 16

## I.    INTRODUCTION

This Court should grant final approval of the Parties' Settlement Agreement and Release of Claims (the "Agreement") because it provides a fair, reasonable and adequate result for the Settlement Class Members and Settlement Collective Members.[1] *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). The Settlement is an excellent result for the Settlement Class Members and Settlement Collective Members, as strongly evidenced by the *zero* objections received from the Settlement Class Members and the low number of individuals (only *two*) that requested exclusion after receiving the Court-approved Notice of the Agreement.

For the reasons set forth herein and in the preliminary approval briefing, this Court should grant Plaintiffs' motion and enter the final approval order contemporaneously submitted via email.

## II.    BRIEF SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiffs' Allegations and Defendant's Defenses

Defendant is a mutual legal reserve company and a member-owned health insurance company headquartered in Chicago, Illinois.[2] *See* Dkt. 1 at ¶ 50. To support its business operations, Defendant employs remote, brick and mortar and flex CSRs throughout the country. *Id*. at ¶ 3. Named Plaintiffs maintain that these CSRs all perform the same or similar over-the-phone customer service duties and use the same or similar computer programs, software programs, applications, and phone systems. *Id*. at ¶ 19. Additionally, Defendant provides the CSRs with their computers and the associated hardware necessary to complete their job duties.  *Id*. at ¶ 82.

---

[1] Unless otherwise specified, capitalized terms are specifically defined in the Parties' Agreement.
[2] *See* https://www.hcsc.com/ (last accessed 1/6/2026).

Named Plaintiffs, the Settlement Class Members, and Settlement Collective Members are current and former hourly CSRs employed by Defendant during the "Relevant Class Period" and "Relevant Collective Period," as defined in the Parties' Agreement. Ex. 1 at ¶ 1.32, ¶ 1.33.

In this lawsuit, Named Plaintiffs alleged that Defendant failed to pay them for all the time they spent booting up and shutting down their computers. *See generally* Dkt. 1. Named Plaintiffs submitted detailed declarations outlining their alleged off-the-clock work in support of the Conditional Certification Motion. Dkt. 14-3 to 14-6. In the Complaint and declarations, Named Plaintiffs estimated that the time related to booting up and shutting down computer systems, which occurred daily, took approximately 15 minutes.[3] *See* Dkt. 1 at ¶ 194.

Defendant, on the other hand, strongly denies Plaintiffs' allegations and maintains that all CSRs were properly paid for all hours worked. Defendant asserted 29 affirmative defenses that include: that include: good faith, willfulness, statute of limitations, *de minimis*, the Portal-to-Portal Act, and failure to exhaust administrative remedies (under applicable CBAs) among others. *See* Dkt. 18. Furthermore, according to Defendant, assuming *arguendo* that any compensable off-the-clock work was suffered/permitted, and Defendant strongly denies that any occurred, Defendant maintains that Named Plaintiffs' factual allegations regarding the time needed to perform the alleged off-the-clock work activities are wildly exaggerated. Instead, the activities are *de minimis* and can (and should) be completed in a small fraction of the time alleged by Named Plaintiffs. Additionally, Defendant has asserted that the CSRs could, and in fact often did, manually record their own actual start and end times in the timekeeping system. Dkt. 21-1. Moreover, CSRs were

---

[3] Some of the Named Plaintiffs alleged that they were not paid for time spent assembling computer hardware as "Flex" employees when they reported to Defendant's brick and mortar facility for work. However, this claim did not occur daily and did not apply to all CSRs.

permitted to log in to the system 5-10 minutes before the start of their scheduled shifts to load programs. Ex. 2, at ¶ 28.

Finally, in addition to these merit-based arguments, Defendant maintains that if litigation continues, no class or collective will be certified because of, among other things, the varying experiences of class and collective members. *See, e.g.,* Dkt. 20-21, Defendant's Opposition to Conditional Certification. All these defenses weighed on Plaintiffs' decision to settle the case.

**B. Procedural History of the Lawsuit**

Named Plaintiffs filed this lawsuit on September 9, 2023, asserting violations of the FLSA on an individual and collective basis, as well as violations of the Illinois Minimum Wage Law, Illinois Wage Payment and Collection Act, common law breach of contract, and unjust enrichment.[4] *See generally*, Dkt. 1. From the onset, Defendant has vehemently contested the allegations in this lawsuit, and still vigorously denies the allegations despite the parties' settlement.

Indeed, shortly after Defendant filed its Answer and Affirmative Defenses (Dkt. 18), the parties fully briefed Plaintiffs' contested motion for conditional certification pursuant to 29 U.S.C. 216(b) of the FLSA. *See* Dkt. 13-14, 20-21, 23.

After taking the issue of conditional certification under advisement, the parties engaged in discovery and related motion practice from December 2023 to December 2024. Even after they advised the Court of their agreement to submit the case to mediation with a qualified class and collective action mediator, the investigation into the claims and defenses continued. Dkt. 63, 66.

---

[4] Detrina Solomon filed her own action shortly after this lawsuit was filed. That case was subsequently voluntarily dismissed, and she joined this lawsuit. For purposes of the Agreement and this motion, she is considered one of the Named Plaintiffs. *See* Dkt. 31-1.

On May 9, 2025, the Parties attended an in-person mediation in Denver, Colorado with nationally recognized wage and hour mediator, Michael Russell (the "Mediator").[5] After a full-day mediation, no settlement was reached. Over the next several weeks, the Parties continued to exchange settlement proposals through the Mediator, eventually reaching an agreement in principle over the monetary terms and general structure of the settlement. However, in finalizing the Memorandum of Understanding ("MOU") additional disagreements arose that required the Parties to return to mediation (this time remotely). Through the second mediation the Parties were able to reach agreement on all material terms and finalize the terms of the MOU. Subsequently, the terms agreed upon in the MOU were incorporated into the Agreement, Notice, and Claim Form, which is now before the Court for approval. *See* Ex. 1.

On September 18, 2025, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and for Approval of FLSA Collective Settlement. Dkt. 85.

On October 9, 2025, the Court granted preliminary approval of the Agreement and set a Final Fairness and Approval Hearing for January 9, 2025. Dkt. 88.

## III. THE PRELIMINARY APPROVAL ORDER AND SETTLEMENT NOTICE ADMINISTRATION

### A. The Settlement Class and Settlement Collective

In preliminarily approving the Agreement (Dkt. #88), the Court preliminarily certified for settlement purposes the following Settlement Class and Settlement Collective:

    a. **Settlement Class** – Named Plaintiffs (including Solomon) and any and all current and former CSRs who worked for Defendant between September 29, 2020 through August 11, 2025 (the "Relevant Class Period").

    b. **Settlement Collective** – Named Plaintiffs (including Solomon) and any and all current and former CSRs who worked for Defendant between January 6, 2022 through August 11, 2025 (the "Relevant Collective Period").

---

[5] *See* https://milesmediation.com/neutrals/michael-russell/ (last accessed on 1/6/2026).

**B. Administration of Settlement Notice**

Following the Court's order preliminarily approving the Agreement, on October 24, 2025, the Settlement Administrator received a class data file from Defense Counsel, which contained the name, social security number, last known mailing address, last known telephone number, and the dates of employment worked for each individual. *Exhibit 2*, Declaration of Makenna Snow at ¶ 5. The data file was uploaded to the Settlement Administrator's database and checked for duplicates and other possible discrepancies. *Id*. The Class List contained 14,889 Class Members of which 12,715 were also Collective Members. *Id*.

On October 8, 2025, the Settlement Administrator sent notice to the appropriate government agencies or attorney generals pursuant to the Class Action Fairness Act ("CAFA") that included, among other documents, a copy of the Complaint and Agreement. *Id*. at ¶ 4.

Next, the Settlement Administrator prepared a draft of the formatted Notice Packet, which was reviewed and approved by the Parties' Counsel prior to mailing. *Id*. at ¶ 6.

As part of the preparation for mailing, all 14,889 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Notice Packet. *Id*. at ¶ 7. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. *Id*. To the extent that no updated address was found in the NCOA database, the original address provided by Counsel for Defendants was used for the mailing of the Notice Packet. *Id*.

On November 6, 2025, the Settlement Administrator mailed the Court-approved Notice package to the Settlement Class Members and Settlement Collective Members. *Id*. at ¶ 8. The mailing of the Notice began the sixty (60) day period to opt-in, request exclusion, or object.

After mailing the Notice, 923 Notice packets were returned to the Settlement Administrator as undeliverable. Ex. 2 at ¶ 9. Of the 923 returned Notice packets, none included a forwarding address. The Settlement Administrator performed a computerized skip trace on the 923 returned Notice packets that did not have a forwarding address, in an effort to obtain an updated address for the purpose of re-mailing the Notice packet. As a result of this skip trace, 782 updated addresses were obtained and the Notice Packets were promptly re-mailed to those Settlement Class Members, via U.S. First Class Mail. *Id*. Additionally, a total of 782 Notice Packets were re-mailed as a result of the Settlement Administrator's skip tracing efforts. *Id*. at ¶ 10. However, a total of 141 Notice Packets have been deemed undeliverable as no updated addresses were found notwithstanding the skip tracing. *Id*. at ¶ 11.

Notably, **zero (0) objections** were received from the Settlement Class Members and the Settlement Administrator **only received two (2) requests for exclusion**. *Id*. at ¶ 12-13.

Additionally, the Settlement Administrator received 2,749 valid Claim Forms from CSRs to opt-into the FLSA Settlement Collective. *Id*. at ¶ 14. The deadline for Settlement Class Members to return their claim forms was January 5, 2025. *Id*.

### C. Settlement Administration Costs

The Settlement Administrator's total fees and costs for services in connection with the administration of the settlement Agreement, which includes fees and costs incurred to-date, as well as anticipated fees and costs for completion of the settlement administration, are $85,000.00. *Id*. at ¶ 19. The Settlement Administrator's work in connection with this matter will continue with the

calculation of the settlement award payments, issuance and mailing of the settlement award checks, the necessary tax filing and reporting on such payments, and any other tasks that the Parties mutually agree to and/or the Court orders the Settlement Administrator to perform. *Id.*

## IV. CERTIFICATION OF THE SETTLEMENT CLASS AND SETTLEMENT COLLECTIVE REMAINS APPROPRIATE

In preliminarily approving the settlement Agreement on October 9, 2025, the Court preliminarily certified the Settlement Class for settlement purposes under Rules 23(a) and 23(b)(3). Dkt. #88. Similarly, the Court certified the Settlement Collective for settlement purposes, pursuant to 29 U.S.C. 216(b). *Id.* Subsequently, the Court-approved Notice of the Agreement went out to the Settlement Class Members and Settlement Collective members, and only *two* CSRs asked to be excluded and *zero* CSRs objected. Nothing has changed since the Court's preliminary approval order and certification of the Settlement Class and Settlement Collective remains appropriate.

## V. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 AND THE COURT APPROVED NOTICE PROCEDURES

In granting preliminary approval, the Court determined that the form, content, and proposed distribution of the Notice of settlement met the requirements of Rule 23. *See* Dkt. #88 ("the Court finds that the requirements for preliminary approval of the proposed settlement and class notice under Fed. R. Civ. P. 23(e)(1)(B) are satisfied."). The Notice approved by the Court informed the Settlement Class Members and Settlement Collective Members of the nature of the claims asserted in the Lawsuit; how to return a claim form; how to opt-out or object; the consequences of taking each action or taking no action at all; their estimated settlement payments; the deadlines for each action; and a detailed explanation of the releases. *Ex. 1*, Exhibit A.

Rule 23(c)(2)(B) requires the Court to direct to Settlement Class Members the "best notice that is practicable under the circumstances, including individual notice to all members who can be

7

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). *Id*. As the Supreme Court held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2)(B). *Id*. Where the names and addresses of settlement class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. The Parties' and the Settlement Administrator's extensive efforts to effectuate notice to the Settlement Class Members and Settlement Collective Members, as described above, meet the requirements of Rule 23(c)(2)(B).

## VI.  FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Although class settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate, and not a product of collusion. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279(7th Cir. 2002) (internal citation omitted).

In determining whether a class settlement meets that standard, the Seventh Circuit has directed courts to assess: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *In re AT & T Mobility Wireless Data Servs. Sales Litig.* At 346, citing *Synfuel Techs.* at 653. *See also*, *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (same). Each of these factors warrants final approval of the Agreement.

### A.  Strength of Plaintiffs' Case as Compared to the Amount of the Settlement

One key consideration in evaluating a settlement is the strength of the plaintiffs' case as compared to the amount of defendant's offer. *See Isby*, 75 F.3d at 1199. In deciding whether to

approve a settlement, the Court must focus on the general principles of fairness and reasonableness but must "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *Id.* at1197-98 (*quoting EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)).

Here, the consideration to be paid by Defendants under the Agreement is substantial and the allocation is reasonable. According to Plaintiffs' expert damage modeling based on four years of data, the Maximum Gross Settlement Amount will provide nearly 6 minutes of unpaid wages per shift (including overtime wages for weeks exceeding 40 hours), which is approximately 40% of the 15 minutes alleged in the Complaint and Plaintiffs' Declarations. Ex. 3 Ash Decl. at ¶ 31.

In monetary terms for the Participating Class Members this equates to an estimated average gross payment of $130.40, with the estimated highest gross payment being $387.10. Ex. 3 Snow Decl. at ¶ 17. **In addition to that amount**, for the Participating Collective Members, they will receive an estimated average payment of $356.29, with the highest payment being $854.47. *Id.* at ¶ 18. Furthermore, these are the expected payments *after* the deductions from the Maximum Gross Settlement Amount are made for attorney's fees, litigation expenses, administration costs, and service payments to the Named Plaintiffs. *Id.*, ¶¶ 17-18.

As explained in the preliminary approval motion (Dkt. #85), a substantial portion of the money being paid to the Settlement Collective Members under the Agreement now falls outside the applicable statute of limitations. Without this Agreement, many Settlement Collective Members would lose their entire overtime claims absent an order tolling their statute of limitations. Additionally, most of the Settlement Class Members worked from states with no additional state wage statutes, meaning any recovery of non-overtime wages would require Plaintiffs to prevail on class certification of common law claims like breach of contract or unjust enrichment.

Additionally, as referenced above, Defendant has asserted 29 affirmative defenses to the claims asserted in the Complaint. All these potential hazards of continued litigation when compared to the substantial recovery made for the Settlement Class and Settlement Collective support approval of the settlement and underscore the reasonableness of the parties' Agreement.

Furthermore, other terms of the Agreement support that the settlement is fair, adequate and reasonable. For example, the Participating Class Members and Participating Collective Members will only provide a release limited to claims arising out of the "identical factual predicate as the underlying claims in the Lawsuit." *See* Ex. 1 at ¶ 4.1(A), ¶ 4.1(B) (defining the "Released Collective Claims" and "Released Class Claims").

In sum, with all facts and circumstances considered, Plaintiffs respectfully submit that the Agreement represents an outstanding result for the Settlement Class Members and Settlement Collective Members. Thus, this factor weighs heavily in favor of settlement approval.

## B. The Complexity, Length and Expense of Continued Litigation

Absent settlement, the Parties would have continued to embark on extensive discovery including depositions, which would be followed by competing dispositive and class certification motions. Additionally, because the conditional certification motion was briefed but not decided, Plaintiffs still risk an adverse ruling on conditional certification, and later, FLSA decertification. Depending on the outcome of those motions, the next step would entail taking the case to trial. The Named Plaintiffs and putative class/collective members risked not only losing on the merits, but also potentially being prevented from pursuing their claims on a collective and/or class basis. Moreover, even if they prevailed at trial, the case would likely continue in appellate litigation. Additional litigation would only serve to increase the expenses incurred without reducing the risks facing the Named Plaintiffs, Settlement Class Members, and Settlement Collective Members. *See*

10

*Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (noting the "considerable expense" of resolving complex issues in a class action). This factor thus favors final approval of the settlement Agreement.

### C. The Lack of Objections to the Agreement Among Effected Parties

An absence of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the settlement class as a whole. *See Hispanics United of DuPage County v. Vill. of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same); *Rusin v. Chicago Trib. Co.*, No. 1:12-CV-01135, 2013 WL 12377129, at *1 (N.D. Ill. June 26, 2013) (holding the lack of objections to wage settlement supports approval); *Myszka v. Nat'l Collegiate Scouting Ass'n, Inc.*, No. 13-CV-01259, 2014 WL 1364468, at *1 (N.D. Ill. Mar. 19, 2014) (same); *see also Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

Here, there are zero objections and only two requests for exclusion from the Agreement. Accordingly, this factor strongly supports settlement approval.

### D. The Opinion of Competent Counsel

Courts place "significant weight" on experienced class counsel's endorsement of a settlement. *In re Mexico Money*, 164 F. Supp. 2d at 1020; *see also In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016) (same). Here, the team that comprises the proposed Class Counsel are highly experienced class and collective attorneys that specialize in wage and hour matters. In fact, Attorney Ash has successfully litigated at least forty (40) class and collective action cases in federal courts across the country that involve unpaid computer bootup and shutdown activities.

Ex. 2, Ash Decl. ¶ 8. In Plaintiffs' Counsel's opinion, the Agreement is fair, reasonable and adequate. *Id*., ¶¶ 34, 56-58. *See also* Dkt. #85-3, Frisch Decl., ¶ 20; Dkt. #85-4, Rodriguez Decl., ¶ 8. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Agreement by Plaintiffs' Counsel. Plaintiffs' Counsel used their experience based on their knowledge of the facts of the case and the legal issues facing the Settlement Class Members and Settlement Collective Members, including conducting an independent analysis of the strength and weakness of the claims and value of the claims as compared to the time and expense of litigation through trial and appeals. *Id*. This factor strongly favors approval of the settlement Agreement.

### E.  The Stage of the Proceedings and the Amount of Discovery Completed

This complex class and collective action was resolved after conditional certification briefing was completed and after the completion of substantial written discovery.[6] In the course of discovery, Defendant produced more than 20,000 documents, which Plaintiffs' Counsel analyzed prior to mediation. Additionally, Plaintiffs' Counsel retained a highly-qualified damages expert to assist them in analyzing the payroll and time data. Among other documents and data produced during the course of discovery, Defendant produced payroll data for the Settlement Class Members, the written employment policies, performance metrics, offer letters, disciplinary records, and e-mail correspondence based on relevant search terms. In sum, the case was settled at a point during the litigation in which the Parties could accurately model damages and thoroughly assess the strengths and weaknesses of the claims asserted. Furthermore, the case was settled after *two* mediations with a qualified and nationally recognized wage and hour mediator and over the

---

[6] The Court previously stayed oral discovery. Dkt. 25.

course of months of arms' length negotiations. The stage of the litigation also strongly supports granting final approval.

## VII. APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE

Unlike the Rule 23 procedure, members of an FLSA collective action must affirmatively opt into the litigation in order to join it. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). Because of this difference between the settlement of Rule 23 class actions and FLSA collective actions, the standard for approval of an FLSA settlement is lower than that for a class action settlement under Rule 23. *Prena v. BMO Fin. Corp.,* 2015 WL 2344949, *1 (N.D. Ill. May 15, 2015) (it is appropriate to use a one-step approval process when certifying a FLSA collective action for settlement purposes because, unlike Rule 23 class actions, "collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision).").

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n. 8 (11th Cir.1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354. For the reasons explained above (and in the preliminary approval motion), the Parties' Settlement easily meets this standard and the FLSA settlement should be approved.

## VIII. THE SERVICE AWARDS FOR THE NAMED PLAINTIFFS ARE APPROPRIATE

Named Plaintiffs each seeks a $10,000.00 Collective and Class Representative Service Awards ("Service Awards") (totaling $50,000.00) for their service and effort in bringing and assisting Class Counsel in the prosecution of the Lawsuit. *See* Ex. 1 at ¶ 3.3(C). These Service

Awards are in addition to the payments Named Plaintiffs will receive as Participating Class Members and Participating Collective Members. No one objected to the proposed Service Awards, as they are aligned with the service awards approved in similar wage and hour cases. *See, e.g., Rusin* at *2 (approving $10,000 service award in wage and hour settlement).

Named plaintiffs in class action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Service Awards are well-suited to employment litigation because the Named Plaintiff assume the risk that future employers may look unfavorably upon them if they have filed suit against former employers. *Beesley v. Int'l Paper Co.*, 2014 WL 375432, *4 (S.D. Ill. Jan. 31, 2014).

Named Plaintiffs took substantial actions to protect the interests of potential class and collective action members, including reviewing the complaint, conferring with Plaintiff's Counsel, giving declarations, responding to written discovery, providing data and information about the claims, and participating in preparing for mediation. Those actions resulted in a substantial benefit to up to 14,889 other CSRs. Courts in this Circuit (including Your Honor) and others have approved incentive awards for similar activities. *See Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards); *Briggs v. PNC Fin. Services Grp., Inc.*, 2016 WL 7018566, *3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award to

14

two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Rusin* at *2 (approving $10,000 service award in wage and hour settlement); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service awards to the name Plaintiffs in wage and hour settlement).

Named Plaintiffs also undertook substantial direct and indirect risk. In agreeing to file this class action suit in their names, Named Plaintiffs undertook the significant risk that, "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSAT USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2011) (internal citations omitted). Named Plaintiffs further risked retaliation (albeit unlawful) from future employers for the benefit of all Settlement Class Members and Settlement Collective Members. *See Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *3 (N.D. Ill. May 1, 2017) (holding that although plaintiff in FLSA settlement "was no longer employed by [d]efendant when he filed the [c]omplaint, he risked retaliation from future employers for the benefit of all [s]ettlement [c]lass [m]embers."). *See also Beesley v. Int'l Paper Co.*, No. 3:06–CV–703–DRH–CJP, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (noting that filing a class action against an employer "carries unique risks and fortitude, including alienation from employers or peers.")."The incentive reward is designed to compensate [Named Plaintiff] for bearing these risks." *Espenscheid,* 688 F.3d at 877

## IX.   CLASS COUNSEL'S ATTORNEYS' FEES OF ONE THIRD OF THE COMMON SETTLEMENT FUND AND LITIGATION COSTS ARE CUSTOMARY AND REASONABLE

The Court should grant Class Counsel's request for an award of attorney fees in the amount of one-third of the Common Fund ($3,333,333.33) because, as Your Honor has noted, "one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois."

*Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016). Indeed, "[c]ourts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements." *Id.*, *5. Here, the Notice informed all Settlement Class Members and Settlement Collective Members of Class Counsel's request for one-third of the common fund and up to $60,000.00 in litigation costs. No Settlement Class Member objected to the proposed attorneys' fees or costs or asked to exclude themselves on the basis of the fees or costs. Because the "central consideration" in determining the "reasonableness of the attorneys' fee" in class action litigation is "what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation," and because Class Counsel achieved an excellent result for the Settlement Class Members and Settlement Collective Members, this motion should be granted. *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014).

### A.  Class Counsel is Entitled to the Payment of Their Reasonable Attorneys' Fees

The attorneys' fees provisions in the FLSA and state wage laws exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the wage laws. *See*, *e.g.*, 29 U.S.C. § 216(b); 820 ILCS 105/12. The Named Plaintiffs have favorably settled their FLSA and IMWL claims on a class and collective basis, which qualifies them as prevailing plaintiffs and entitles Class Counsel to their reasonable attorneys' fees and costs. *De La Riva v. Houlihan Smith & Co., Inc.*, 2013 WL 5348323, *1 (N.D. Ill. March 3, 2015), citing *Small v. Richard Wolf Med. Instr. Corp.*, 264 F.3d 702, 707 (7th Cir. 2001).

In settlements such as the present settlement, when counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."

16

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (holding creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (*quoting Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

In the present settlement, "[p]laintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois" and "[c]ourts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlement." *Castillo* at *4-5, citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005) (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund). Indeed, one-third or more of the common fund is standard for FLSA common fund collective action settlements in this Circuit. *See*, *Castillo* 2016 WL 7451626, *at *5*; *Briggs*, at *3 (N.D. Ill. Nov. 29, 2016); *Prena* at *1 (N.D. Ill. May 15, 2015); *Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *3 (N.D. Ill. May 1, 2017); *Kujat v. Roundy's Supermarkets Inc.*, No. 1:18-CV-05326, 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021); *Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018); *Benoskie v. Kerry Foods, Inc.*, No. 19-CV-684-PP, 2020 WL 5769488, at *3 (E.D. Wis. Sept. 28, 2020); *Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898, at *2 (N.D. Ill. Nov. 4, 2022); *Gallant v. Arrow Consultation Servs., Inc.*, No. 119CV00925SEBMPB, 2020 WL 2113399, at *4 (S.D. Ind. May 4, 2020); *Chen v. Genesco, Inc.*, No. 118CV00690SEBTAB, 2020 WL 360517, at *5 (S.D. Ind. Jan. 22, 2020);

17

*Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016).

Class Counsel's requested fee is also reasonable in light of the significant risks of nonpayment that they faced in taking this case on a contingency basis. At the outset of the litigation, Class Counsel took "on a significant degree of risk of nonpayment" in agreement to represent the Named Plaintiffs. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees); *Sutton*, 504 F.3d 688, 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, as explained above, Class Counsel faced significant legal and factual hurdles in establishing and maintaining certification and proving liability. As the Seventh Circuit has noted, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litg.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

Nor will Settlement Class Members or Settlement Collective Members, with the exception of the Named Plaintiffs, be required to provide a general release in order to participate in the Settlement. As a result, only claims arising out of the identical factual predicate will be released and the Settlement Class Members and Settlement Collective Members may still pursue other claims that do not arise out of the identical factual predicate as the claims asserted in the Lawsuit. The absence of a general release exemplifies the results achieved for the Settlement Class. *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 199) (noting that the "most striking aspect of the settlement" was limited release of claims).

The Notice sent to the Settlement Class Members and Settlement Collective Members after preliminary approval state that Class Counsel sought attorney fees of $3,333,333.33 and up to $60,000.00 in litigation costs. Currently, litigation costs are only $35,375.98, and the unused funds will pour into the Net Settlement Amount for the benefit of the Settlement Class and Settlement Collective. Ex. 1 at ¶ 1.20, ¶ 3.3(A). Importantly, no Settlement Class Member or Settlement Collective Member objected to this fee request or asked to exclude themselves from the settlement on the basis of the fees or costs.

For these reasons, Class Counsel submits that their requested fee of one-third the common fund is reasonable, and they request that the Court approve the requested award.

### B. Class Counsel's Litigation Expenses are Reasonable

Class Counsel also seeks to recover $35,375.98 in reasonably incurred litigation costs, which, as stated above, is less than the Agreement provided. Class Counsel incurred those costs in prosecuting this case, including costs for court fees, electronic research, service of process fees, expert fees, travel and hotel expenses, and Plaintiffs' portion of the mediator's fees. Ash Decl., at ¶ 47. *See also* Dkt. 85-2, 85-3, 85-4. Furthermore, all these fees were reasonably and necessary in the prosecution of this case. *Ex. 3* at ¶47.

### X.   PAYMENT OF THE SETTLEMENT ADMINISTRATOR'S FEES IS REASONABLE

In addition, the Agreement provides for the Settlement Administrator's fees of $85,000.00, to be paid to the Settlement Administrator from the Maximum Gross Settlement Amount ("Common Fund"). Ex. 1 at ¶ 2.2(A). Based on Plaintiffs' Counsel's experience, the price of approximately $6-$7 per head is an excellent price. Ex. 3 at ¶ 46. *See also Mason v. M3 Fin. Servs., Inc.*, No. 15-CV-04194, 2018 WL 11193175, at *2 (N.D. Ill. June 29, 2018) (Your Honor holding that "[t]he Court also finds reasonable and approves the costs incurred by the Claims Administrator

in administering the claims and notice in this matter in the amount of $83,000 to be paid out of the Settlement Fund.").

## XI.    CONCLUSION

Because this is a fair, reasonable, and adequate settlement that is in the best interest of the Named Plaintiffs, Settlement Class Members, and Settlement Collective Members, the Court should grant final approval and enter the proposed Order that is being contemporaneously emailed to chambers.

Dated: January 6, 2026                    Respectfully Submitted,

**ASH LAW, PLLC**

*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877) (*Admitted*)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**RODRIGUEZ LAW, PLC**
Oscar Rodriguez (P73413) (*Admitted*)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 662-4426
oscar@orodlaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E Monroe Street, Suite 3800
Chicago, IL 60603
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**SOMMERS SCHWARTZ, P.C.**
Jason J. Thompson (*Admitted*)
Alana A. Karbal (*Admitted*)
One Towne Square, 17th Floor
Southfield, MI 48076
jthompson@sommerspc.com

akarbal@sommerspc.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Charles R. Ash, IV*